**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DONNA SAUNDERS, | : | |
| Plaintiff, | : | Civil Action No. 05-10318 (NG) |
| v. | : | |
| BENJAMIN STAPLES and THE F.A. BARTLETT TREE EXPERT CO., INC., | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT**

Defendants Benjamin Staples ("Staples") and The F.A. Bartlett Tree Expert Co., Inc. ("Bartlett Tree") have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss certain of plaintiff's claims against them, with prejudice. Defendants submit this memorandum of law in support of their motion.

**BRIEF STATEMENT OF FACTS**

Plaintiff, a former employee of Bartlett Tree, has sued Bartlett Tree and Staples in a multi-count complaint. In Count I of her complaint, plaintiff alleges that Bartlett Tree discriminated against her by sexually harassing her and creating a hostile work environment, in violation of Mass. Gen. Laws chapter 151B, sections 4(1), 4(1B), 4(4) and 4(16A). In Count II of her complaint, plaintiff alleges that Staples discriminated against her by sexually harassing her and creating a hostile work environment, in violation of Mass. Gen. Laws chapter 151B, sections 4(1), 4(1B), 4(4), and 4(16A). In Count III of her complaint, plaintiff alleges that Bartlett Tree retaliated against her, leading to her constructive discharge, in violation of Mass. Gen. Laws chapter 151B, sections 4(4) and 4(4A). In Count IV of her complaint, plaintiff alleges that

Staples retaliated against her, leading to her constructive discharge, in violation of Mass. Gen. Laws chapter 151B, sections 4(4) and 4(4A). In Count V of her complaint, plaintiff alleges that Bartlett Tree discriminated against her and "allowed a sexually hostile work environment to exist," in violation of 42 U.S.C. § 2000e-2(a)(1) & (2) of Title VII of the Civil Rights Act of 1964 ("Title VII"). In Count VI of her complaint, plaintiff alleges that Staples discriminated against her and "allowed a sexually hostile work environment to exist," in violation of 42 U.S.C. § 2000e-2(a)(1) & (2) of Title VII. In Count VII of her complaint, plaintiff alleges that Bartlett Tree intentionally inflicted emotional distress on her. In Count VIII of her complaint, plaintiff alleges that Staples intentionally inflicted emotional distress on her.

Defendant Staples is the manager of Bartlett Tree's office located in Beverly Farms, Massachusetts. Compl. ¶ 7; Compl. Exh. 1 at 9. Defendant Bartlett Tree's corporate office is located in Stamford, Connecticut. Compl. Exh. 1 at 2, 9. Bartlett Tree also has a Division office located in Osterville, Massachusetts which is separate from the local office in Beverly Farms. Compl. Exh. 1 at 9.

Plaintiff alleges in her complaint that on or about April 17, 2003, she filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission. Compl. ¶ 52 & Exh. 1. The only person or entity named in this administrative charge as having discriminated against plaintiff is Bartlett Tree. Compl. Exh. 1.

Defendants seek dismissal of Counts II, IV, VI, and VII of plaintiff's complaint. In addition, defendants seek dismissal of all claims against Staples alleging a violation of Mass. Gen. Laws chapter 151B, Sections 4(1), 4(1B) and 4(16A), and dismissal of all claims alleging a violation of Mass. Gen. Laws chapter 151B sections 4(1B) and 4(4A).

## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Ecological Fibers, Inc. v. Kappa Graphic Board, B.V.*, 345 F. Supp. 2d 13, 14 (D. Mass. 2004). Dismissal under Rule 12(b)(6) is appropriate if "'it appears, beyond doubt, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir. 1998)). "In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *Id.* (citing *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000)). Accordingly, in ruling on this motion, the Court may consider plaintiff's administrative charge of discrimination, which is attached to her complaint. *See, e.g., Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. 228, 232 n.6 (D. Mass 1997) (considering administrative charge, as it is a public record and referred to in complaint).

## ARGUMENT

### I. COUNTS II AND IV OF PLAINTIFF'S COMPLAINT AGAINST STAPLES, ALLEGING VIOLATIONS OF CHAPTER 151B OF THE MASSACHUSETTS GENERAL LAWS, MUST BE DISMISSED, AS PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES UNDER CHAPTER 151B WITH RESPECT TO STAPLES

In Count II of her complaint, plaintiff alleges that Staples discriminated against her by sexually harassing her and creating a hostile work environment, in violation of Mass. Gen. Laws ch. 151B, §§ 4(1), 4(1B), 4(4), and 4(16A). In Count IV of her complaint, plaintiff alleges that Staples retaliated against her, leading to her constructive discharge, in violation of Mass. Gen.

Laws ch. 151B §§ 4(4) and 4(4A). These claims must be dismissed, as plaintiff has failed to exhaust her administrative remedies against Staples.

A person claiming to be aggrieved under chapter 151B of the Massachusetts Laws must first file a charge of discrimination with MCAD. Mass. Gen. Laws ch. 151B § 5. In that charge, the complainant must include "appropriate identification of the . . . person(s) alleged to have committed unlawful discriminatory acts." *Chatman*, 973 F. Supp. at 233 (quoting 804 C.M.R. 1.03(4)(a)); *Cuddi v. Gallery Gift Shoppes d/b/a Kitchen, Etc.*, 17 Mass. L. Rep. 65, 2003 Mass. Super. LEXIS 405, at *14 (Middlesex Superior Court 2003) (copy attached). Filing a charge is required so as to "'provide the employer with prompt notice of the claim and to create an opportunity for early conciliation.'" *Chatman*, 973 F. Supp. at 233 (quoting *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996)). Failure to file a charge with MCAD bars the complainant from filing a subsequent lawsuit in court under chapter 151B. *See Chatman*, 973 F. Supp. at 233; *Cuddi*, 2003 Mass. Super. LEXIS 405, at *15. In addition, the failure to name a party in a charge filed with MCAD precludes the plaintiff from maintaining a lawsuit against such person under chapter 151B. *See Fink v. Printed Circuit Corp.*, 204 F. Supp. 2d 119, 129 (D. Mass. 2002); *Chatman*, 973 F. Supp. at 233. A person not named in a MCAD charge can only be the subject of a subsequent lawsuit under chapter 151B if the charge gives the person "notice of the alleged discriminatory conduct and an opportunity to participate in the MCAD proceeding." *Fink*, 204 F. Supp. 2d at 129; *see also Chatman*, 973 F. Supp. at 235.

As set forth above, Defendant Staples works in Bartlett Tree's local office in Beverly Farms; he does not work at the Division office. Plaintiff's MCAD charge does not list Staples as the person(s) alleged to have committed discriminatory actions against her. Compl. Exh. 1. Rather, the charge only lists Bartlett Tree as having discriminated against her. Compl. Exh. 1.

While the narrative accompanying plaintiff's charge refers to Staples, it does not directly accuse him of engaging in any conduct which violates chapter 151B. *See* Compl. Exh. 1.

Plaintiff's approximate two page narrative regarding alleged sexual harassment does not allege that Staples sexually harassed plaintiff; rather, plaintiff alleges that she was harassed by Todd Crandall and the Division office of Bartlett Tree. *See* Compl. Exh. 1 at 2-4. Moreover, plaintiff's 1 ½ page narrative regarding retaliation does not accuse Staples of retaliating against her; rather, plaintiff alleges that the alleged retaliatory conduct was carried out by employees in Bartlett Tree's Division office. *See* Compl. Exh. 1 at 4-5.

Indeed, in many instances, plaintiff said positive things about Staples in her charge. For example, plaintiff states that (1) Staples asked her what she wanted to do about the Crandall incident and she told him she did not want to do anything, Compl. Exh. 1 at 2; (2) Staples told her not to worry about it when she informed him she could not be at the office by 8:00 a.m., Compl. Exh. 1 at 4; (3) she warned Staples that the Division office was setting him up in the event she sued the Company and she told him to protect himself, Compl. Exh. 1 at 5, 6; (4) Staples told her that she had been performing to his expectations and was an excellent employee, Compl. Exh. 1 at 6; and (5) Staples signed documents stating she was an excellent employee. Compl. Exh. 1 at 7-8. Indeed, plaintiff alleges in her charge that she has been in contact with Staples since she left the Company, Compl. Exh. 1 at 7, and that after she left, he wrote her a reference letter stating that she was "diligent, hard working, creative, honest, and forthright." *Id.* at 8. In her charge, plaintiff asserts that the ***Division office*** encouraged a hostile environment and that the ***Division office*** "continued to intentionally inflict emotional distress" on her. Compl. Exh. 1 at 9. These positive statements which plaintiff attributes to Staples and the fact that plaintiff felt she had to warn Staples that the Division office may be setting him up do not put

Staples on notice that plaintiff was accusing Staples of directly engaging in discriminatory or retaliatory conduct against her.

Moreover, plaintiff's complaint is devoid of any allegation that Staples had notice of the MCAD charge, participated in the MCAD proceedings and had an opportunity to conciliate any alleged charge against him. Accordingly, plaintiff's claims against Staples under chapter 151B must be dismissed. *See, e.g., Fink*, 204 F. Supp. 2d at 129; *Chatman*, 973 F. Supp. at 236; *Cuddi*, 2003 Mass. Super. LEXIS 65, at *14-16.

## II. ALTERNATIVELY, ALL CLAIMS AGAINST STAPLES ALLEGING A VIOLATION OF MASS. GEN. LAWS CHAPTER 151B SECTIONS 4(1), 4(1B) AND 4(16A) MUST BE DISMISSED, AS THERE IS NO INDIVIDUAL LIABLITY FOR SUCH VIOLATIONS

In the event the Court finds that plaintiff did exhaust her administrative remedies under Chapter 151B with respect to Staples, plaintiff's claims against Staples alleging violations of chapter 151B, sections 4(1), 4(1B) and 4(16A) must nevertheless be dismissed, as there is no individual liability under such sections.

In Count II of her complaint, plaintiff alleges that Staples discriminated against her by sexually harassing her and creating a hostile work environment, in violation of, among other sections, Mass. Gen. Laws chapter 151B, sections 4(1), 4(1B) and 4(16A). Plaintiff further alleges that the jurisdiction of the court is invoked pursuant to, and this complaint is filed pursuant to, among other things, Mass. Gen. Laws chapter 151B, sections 4(1), 4(1B) and 4(16A). Compl. ¶¶ 4, 55. These claims must be dismissed.

Section 4(1) provides, in pertinent part, that it shall be an unlawful employment practice

> ***For an employer***, by himself or his agent, because of the . . . sex, . . . of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

Mass. Gen. Laws chapter 151B, section 4(1) (emphasis added).

Section 4(1B) provides that it shall be an unlawful employment practice

> ***For an employer*** in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

Mass. Gen. Laws chapter 151B, section 4(1B) (emphasis added).

Section 4(16A) provides that it shall be an unlawful employment practice

> ***For an employer***, personally or through its agents, to sexually harass any employee.

Mass. Gen. Laws chapter 151B, section 4(16A) (emphasis added).

Chapter 151B states that the term "employer" does not include "any employer with fewer than six persons in his employ." Mass. Gen. Laws chapter 151B, section 1(5). Staples is not an employer within the meaning of section 1(5), and thus cannot be liable under Mass. Gen. Laws chapter 151B, sections 4(1), 4(1B) and 4(16A). As MCAD has previously explained in its "Sexual Harassment in the Workplace Guidelines," an individual may be liable under chapter 151B sections 4(1) and 4(16A), which prohibit unlawful sexual harassment by an employer, "***[w]hen an individual is the employer***, rather than merely an agent of the employer." Sexual Harassment in the Workplace Guidelines Section IV(A) (emphasis added).[1] As MCAD explained, "[d]epending on the size, nature and form of the business, an individual may be so closely identified with the business entity that the individual is personally liable as the employer. [endnote omitted] This may apply to principals, owners, presidents or partners in a business. [endnote omitted]" *Id.*

---

[1] A copy of the relevant pages of the Guidelines is attached hereto.

This Court previously recognized the distinction in the terminology between Section 4(1) and Sections 4(4A) and 4(5). In *Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019 (D. Mass. 1995) (Judge Gertner), the plaintiff alleged, among other things, that her employer as well as the individual defendants retaliated against her in violation of Chapter 151B. In addressing the issue of whether the individual defendants could be held liable under Chapter 151B, the court recognized that Section 4(1) of Chapter 151B set forth the general prohibition against discrimination and applied "to each employer, acting by and through its principal and its agents." *Id.* at 1048. In contrast, the court recognized that other provisions of Chapter 151B, Section 4 "state that individuals, qua individuals, and not merely qua employer," may be found liable under Chapter 151B, and pointed to Sections 4(4A) and 4(5) as sections which provide for individual liability as evidenced by the use of the term "any person" to describe who is prohibited from engaging in certain acts. *Id.* In denying the individual defendants' motion for summary judgment based on the argument that there is no individual liability under Chapter 151B for retaliation, the court stated:

> The distinction between the terminology used in M.G.L. c. 151B, § 4(1) ("employer, by himself or his agent") and in Sections 4(4a) and 4(5) ("any person") bears notice. By its distinctly crafted terms, M.G.L. 151B applies not only to employers acting through their principals and agents, but also to any person who aids and abets discriminatory or retaliatory conduct prohibited under Chapter 151B, as well as to any person who interferes with another's right to work free of unlawful discrimination and retaliation.

*Id.*

Staples is not plaintiff's employer. Moreover, Staples is not a principal, owner, president or partner of plaintiff's employer, Bartlett Tree. As set forth in the Statement of Facts, Staples is the manager of Bartlett Tree's local office in Beverly Farms. Bartlett Tree also has a Division office in Osterville, Massachusetts, and Bartlett Tree's corporate office is in Stamford,

Connecticut. Bartlett Tree is not a small entity where the company and its corporate officers can be considered one and the same. As Sections 4(1), 4(1B) and 4(16A) use the term "employer" as opposed to "any person," there is no individual liability under Sections 4(1), 4(1B) and 4(16A) and such claims against Staples must be dismissed.

## III. COUNT VI OF PLAINTIFF'S COMPLAINT AGAINST STAPLES MUST BE DISMISSED, AS THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII

In Count VI of her complaint, plaintiff alleges that Staples discriminated against her in violation of 42 U.S.C. § 2000e-2(a)(1) & (2) of Title VII. Plaintiff's Title VII claim against Staples must be dismissed.

Title VII prohibits discrimination by an employer. *See* 42 U.S.C. § 2000e-2(a). Title VII defines an "employer" as a person engaged in commerce who has 15 or more employees. *See* 42 U.S.C. § 2000e(b). The First Circuit has not definitely decided the issue of individual liability under Title VII, although it has intimated in *dicta* that Title VII does not provide for individual liability. *See Velex v. Awning Windows, Inc.*, 375 F.3d 35, 43 n.5 (1st Cir. 2004) (noting that Title VII does not impose liability on supervisors). As the United States District Court for the District of Massachusetts has previously recognized, however, "[o]nly the First Circuit has yet to address the issue of individual liability under Title VII. Each of the eleven other circuits has asserted that individual employees, agents, and/or supervisors are not liable under Title VII." *Healy v. Henderson*, 275 F. Supp. 2d 40, 45 n.39 (D. Mass. 2003) (collecting cases). Accordingly, plaintiff's Title VII claims asserted against Staples in Count VI of plaintiff's complaint must be dismissed. *See, e.g., Healy*, 275 F. Supp. 2d at 45.

## IV. COUNT VII OF PLAINTIFF'S COMPLAINT AGAINST BARTLETT TREE MUST BE DISMISSED, AS THE CLAIM IS BARRED BY THE EXCLUSIVITY PROVISION OF THE MASSACHUSETTS WORKERS COMPENSATION ACT

In Count VII of her complaint, plaintiff alleges a claim of intentional infliction of emotional distress against Bartlett Tree. Specifically, plaintiff alleges that Bartlett Tree "knew or should have known that emotional distress was likely to result as a result of the treatment that the Plaintiff received from her superior and coworkers." Compl. ¶ 93. Plaintiff further alleges that she suffered, among other things, "mental anguish, loss of sleep and other physical harm." Compl. ¶ 95. Plaintiff's claim against Bartlett Tree for intentional infliction of emotional distress must be dismissed, as the claim is barred by the exclusivity provision of the Massachusetts Workers Compensation Act.

The Massachusetts Workers Compensation Act is the sole remedy available to employees for personal injuries arising out of employment, unless an employee provided his or her employer with written notice at the time of the contract for hire that he or she was not waiving such claims. Mass. Gen. Laws ch. 152 § 24. The Massachusetts Workers Compensation Act defines "personal injury" to include intentional infliction of emotional distress. Mass. Gen. Laws ch. 152 § 1(7A). Plaintiff's intentional infliction of emotional distress claim is premised upon alleged conduct arising out of her employment with Bartlett Tree. Accordingly, plaintiff's intentional infliction of emotional distress claim against Bartlett Tree is barred by the exclusivity provision of the Massachusetts Workers Compensation Act. *See, e.g., Andresen v. Diorio,* 349 F.3d 8, 15-16 (1st Cir. 2003); *Hinchey v. Nynex Corp.*, 144 F.3d 134, 146 n.7 (1st Cir. 1998).

## V. ALL CLAIMS ALLEGING A VIOLATION OF MASS. GEN. LAWS CHAPTER 151B SECTION 4(1B) MUST BE DISMISSED, AS PLAINTIFF HAS NOT SET FORTH ANY ALLEGATIONS OF AGE DISCRIMINATION IN HER COMPLAINT AND PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH RESPECT TO AGE DISCRIMINATION, AS SHE DID NOT FILE A MCAD CHARGE ALLEGING AGE DISCRIMINATION

In Counts I and II of her complaint, plaintiff alleges that Bartlett Tree and Staples, respectively, violated, among other things, Mass. Gen. Laws chapter 151B section 4(1B). Compl. ¶¶ 60, 65. Plaintiff further alleges that the jurisdiction of the court is invoked pursuant to, and this complaint is filed pursuant to, among other sections, Mass. Gen. Laws chapter 151B, section 4(1B). Compl. ¶¶ 4, 55. All claims alleging a violation of Mass. Gen. Laws chapter 151B, section 4(1B) must be dismissed.

As set forth above, Mass. Gen. Laws chapter 151B, section 4(1B) provides that it shall be an unlawful employment practice for an employer to discriminate against an individual because of the individual's age. Plaintiff's complaint herein is devoid of any allegation that she was discriminated against because of her age. Moreover, plaintiff never filed a charge with MCAD alleging that she was discriminated against because of her age. *See* Compl. Exh. 1. Indeed, plaintiff's MCAD charge only alleges that she was discriminated against "on the basis of my sex (sexual Harassment), retaliated against and constructively discharged in in [sic] violation of M.G.L. 151B Section 4 Paragraphs 1, 4, 16A and Title VII." Compl. Exh. 1 at 1. The charge makes no reference to age or to Mass. Gen. Laws chapter 151B, Section 4(1B). Accordingly, all allegations that plaintiff was discriminated against in violation of Mass. Gen. Laws chapter 151B, Section 4(1B) must be dismissed.

## VI ALL CLAIMS ALLEGING A VIOLATION OF MASS. GEN. LAWS CHAPTER 151B SECTION 4(4A) MUST BE DISMISSED, AS PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH RESPECT TO ANY VIOLATION OF SECTION 4(4A), AS SHE DID NOT FILE A MCAD CHARGE ALLEGING SUCH A VIOLATION

In Counts III and IV of her complaint, plaintiff alleges that Bartlett Tree and Staples, respectively, violated, among other things, Mass. Gen. Laws chapter 151B section 4(4A). Compl. ¶¶ 73, 82. Plaintiff further alleges that the jurisdiction of the court is invoked pursuant to, and this complaint is filed pursuant to, among other things, Mass. Gen. Laws chapter 151B, section 4(4A). Compl. ¶¶ 4, 55. All claims alleging a violation of Mass. Gen. Laws chapter 151B, section 4(4A) must be dismissed.

Mass. Gen. Laws chapter 151B, section 4(4A) provides that it shall be an unlawful employment practice:

> For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

Mass. Gen. Laws chapter 151B, section 4(4A). Plaintiff never filed a charge with MCAD alleging a violation of Section 4(4A). As set forth previously, plaintiff's charge merely alleges that she was discriminated against because of her sex, retaliated against and constructively discharged in violation of "M.G.L. 151B Section 4 Paragraphs 1, 4, 16A and Title VII." Compl. Exh. 1 at 1. The charge makes no reference to Mass. Gen. Laws chapter 151B, Section 4(4A). Accordingly, all allegations that plaintiff was discriminated against in violation of Mass. Gen. Laws chapter 151B, Section 4(4A) must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants Staples and Bartlett Tree request that the Court grant their motion and dismiss certain of plaintiff's claims against them, with prejudice. Specifically, defendants request that the Court dismiss with prejudice Counts II, IV and VI alleged against Staples. Defendants request that the Court dismiss with prejudice Count VII alleged against Bartlett Tree. Defendants further request that the Court dismiss with prejudice all claims alleging a violation of Mass. General Laws chapter 151B sections 4(1B) and 4(4A). Moreover, Defendants request that all claims against Staples alleging a violation of Mass. Gen. Laws chapter 151B sections 4(1), 4(1B) and 4(16A) be dismissed with prejudice.

Dated: March 10, 2005

Respectfully submitted,

_/s/ Anessa Abrams_______________________________

Eric L. Yaffe BBO # 548185
Gary L. Lieber (admitted *pro hac vice*)
Anessa Abrams (admitted *pro hac vice*)
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, DC 20037
(202) 333-8800
(202) 625-3301 FAX

Attorneys for Defendants
Benjamin Staples and The F.A. Bartlett Tree
Expert Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT** was served this 10th day of March, 2005, by first class United States mail, postage prepaid, to the following:

Ronald L. Brandt, Esq.
44 Washington Street
Wellesley, MA 02481

Attorney for Plaintiff

_/s/ Anessa Abrams___________________________
Anessa Abrams

BD0749

LEXSEE 17 MASS. L. REP. 65

**Paul Cuddi v. Gallery Gift Shoppes d/b/a Kitchen, Etc. et al.**

**2003-1369-C**

**SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX**

**17 Mass. L. Rep. 65; 2003 Mass. Super. LEXIS 405**

**October 24, 2003, Filed**

**DISPOSITION:** Motions to dismiss allowed in part and denied in part.

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] Peter M. Lauriat, Justice of the Superior Court.

**OPINIONBY:** Peter M. Lauriat

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON (1) DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO M.R.C.P. 12(b)(6), AND (2) DEFENDANT ROBERT CAMP'S AND DARLENE TAILLON'S JOINT MOTION TO DISMISS PURSUANT TO M.R.C.P. 12(b)(2)

Paul Cuddi ("Cuddi"), a former employee of Kitchen, Etc., brought this action against Gallery Gift Shoppes, d/b/a Kitchen, Etc. ("Kitchen, Etc."), Scott Michaud ("Michaud"), Edward Doherty ("Doherty"), Judith White ("White"), Judith May ("May"), Ron Mayly ("Mayly"), Robert Camp ("Camp") and Darlene Taillon ("Taillon") (collectively, "the defendants"), alleging sexual harassment and sexual orientation discrimination, civil rights violations, retaliation, negligent and intentional infliction of emotional distress, and aiding and abetting, arising from a hostile work environment. The defendants have moved to dismiss certain counts of the complaint pursuant to Mass.R.Civ.P. 12(b)(2) and 12(b)(6). For the following reasons, the defendants' motions are allowed in part and denied in part.

BACKGROUND

Cuddi was hired by Kitchen, Etc. as an assistant store manager in January 2000, and promoted to general manager [*2] of its retail store in Burlington, Massachusetts, in December 2001. Cuddi alleges that while he was employed at the Burlington store, defendants Michaud, White and Doherty, employees of Kitchen, Etc., subjected him to a hostile work environment based on his sexual orientation. Specifically, Cuddi alleges that in May 2002, Doherty approached him in the back room of the store and stated, "this is what you called me back here for . . . this is what you want," and proceeded to unbuckle his belt and unzip his pants. Cuddi also alleges that on another occasion that same month, defendant White came into the back room and said in the presence of Cuddi, Michaud and Doherty, "I heard a gay guy was screwing in the back room and I wanted to see how a gay guy screwed." Cuddi alleges in his complaint that sexually harassing comments and conduct of this sort occurred on a daily basis at the Burlington store.

Cuddi further asserts that he reported the alleged harassing conduct to his supervisor, district manager Judith May, in June 2002. He alleges that shortly thereafter, May stated to Cuddi that he was losing control of the store because of his failure to report the harassment earlier. May then [*3] told Cuddi he would either be demoted and moved to a different retail store 80 miles away or he could resign. May also stated that Kitchen, Etc. had a "zero tolerance policy" for sexual harassment but failed to take any disciplinary actions against the employees who had allegedly harassed him. Cuddi decided to stay at the Burlington retail store but the harassment continued and on June 16, 2002, he contacted May and notified her of his resignation.

On October 31, 2002, Cuddi filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") against Kitchen, Etc., describing these incidents. Approximately ninety days later, Cuddi removed the complaint from the MCAD. On March 25, 2003, Cuddi filed a 16-count complaint in this court.

The defendants have now moved to dismiss nine of the counts: Count II (violation of G.L.c. 12, § 11I stemming from sexual harassment, against Kitchen, Etc.), Count IV (violation of G.L.c. 12, § 11I based on sexual orientation, against Kitchen, Etc.); Count VI (negligent infliction of emotional distress, against Kitchen, Etc.); Count VII (intentional infliction of emotional distress, against [*4] Kitchen, Etc.); Count IX (aid-





ing and abetting in violation of G.L.c. 151B, § 4(5), against May, Taillion, Mayly and Camp); Count XI (violation of G.L.c. 12, § 11I stemming from sexual harassment, against Michaud, White and Doherty); Count XII (intentional infliction of emotional distress, against Michaud, White and Doherty); Count XIII (reckless infliction of emotional distress, against Michaud, White and Doherty); and Count XV (violation of G.L.c. 12, § 11I based on sexual orientation, against Michaud, White and Doherty).

DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded factual allegations of the complaint, as well as any reasonable inferences which can be drawn therefrom in the plaintiff's favor. *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 429, 583 N.E.2d 228 (1991). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Nader v. Citron*, 372 Mass. 96, 98, 360 N.E.2d 870 (1977), [*5] citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). "[A] complaint is not subject to dismissal if it would support relief on any theory of law." *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 89, 390 N.E.2d 243 (1979).

I. Counts II, IV, XI and XV

The defendants contend that Counts II, IV, XI and XV, alleging violations of the Massachusetts Civil Rights Act, G.L.c. 12, § 11I ("MCRA"), must be dismissed because Cuddi's MCRA claims are preempted by Cuddi's identical claims under G.L.c. 151B, and because the alleged harassing conduct by the defendant coworkers does not as a matter of law constitute threats, intimidation or coercion as required under MCRA.

A.

The defendants first contend that Counts II, IV, XI and XV are preempted by Cuddi's identical claims under G.L.c. 151B. Specifically, they assert that G.L.c. 151B, § 9 provides the exclusive remedy for employment discrimination actions. Section 9 of chapter 151B provides, in relevant part, that, "as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final [*6] determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned."

Whether a plaintiff who satisfies the procedural requirements of G.L.c. 151B may thereafter assert an action in court under other statutes has not been expressly decided by the Supreme Judicial Court and is the subject of significant debate. n1 This court has held that where a plaintiff satisfies the requirements of G.L.c. 151B, he may thereafter proceed to bring an action in the Superior Court under other relevant statutes. *DeBarboza v. Cablevision of Boston, Inc.*, Civil No. 98-4244 (Lauriat, J.) (Super.Ct. Jan. 29, 1999) (9 Mass. L. Rep. 539); *O'Brien v. Avis Rent A Car System, Inc.*, Civil No. 96-5501 (Lauriat, J.) (Super.Ct. May 1, 1997) (6 Mass. L. Rptr. 567); see also *Jancey v. School Committee of Everett*, 421 Mass. 482, 497, 658 N.E.2d 162 (1995); *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586, 631 N.E.2d 555 (1994); *Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21, 25 (1st Cir. 1995). The defendants have not disputed that Cuddi has met the administrative requirements of c. 151B. [*7] Therefore defendants' motion to dismiss Counts II, IV, XI and XV on the ground that they are preempted by G.L.c. 151B is denied.

n1 The debate over this issue appears to be primarily in the Superior Court. See discussion in *Rowe v. Town of North Reading*, 2001 Mass. Super. LEXIS 38, Civil No. 98-4216 (Super.Ct. Jan. 5, 2001) (Houston, J.).

B.

The defendants have also moved to dismiss Counts II, IV, XI and XV on the ground that Cuddi cannot show a violation of MCRA because the defendants' actions could not amount to interference or an attempt to interfere with Cuddi's rights by "threats, intimidation or coercion." G.L.c. 12, §§ 11H and 11I. Specifically, they assert that "threats, intimidation or coercion," under MCRA must involve actual or potential physical confrontations involving threat of harm.

The defendants are correct that the Supreme Judicial Court has repeatedly interpreted the phrase, "threats, intimidation or coercion," to occur in cases of actual or potential physical [*8] confrontations involving threat of harm. *Planned Parenthood League v. Blake*, 417 Mass. 467, 473 n.8, 631 N.E.2d 985 (1994); *Layne v. Superintendent, Massachusetts Correctional Institution*, 406 Mass. 156, 158, 546 N.E.2d 166 (1989). However, the Court has made clear that in interpreting the word "coercion," it does not limit its scope to actual or attempted physical force. *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 646, 783 N.E.2d 399 (2003) (eco-







nomic coercion alone may be actionable under MCRA). Rather, coercion can include either physical or moral force which constrained the plaintiff to "do against his will something he would not otherwise have done." *Id.*

Cuddi charges in Counts II and IV of his Complaint that defendant Kitchen, Etc. failed to protect him from the alleged harassment with proper training or other management efforts. He does not claim in his complaint that Kitchen, Etc. itself targeted a "direct assault" at him. See *Bally v. Northeastern Univ.*, 403 Mass. 713, 719, 532 N.E.2d 49 (1989). Accepting as true Cuddi's allegation that Kitchen, Etc. failed to properly train or manage its employees to protect him from sexually harassing and discriminating conduct, [*9] this failure does not involve actions rising to the level of threats, intimidation or coercion under MCRA. See *Longval v. Comm'r of Correction*, 404 Mass. 325, 333, 535 N.E.2d 588 (1989). Therefore, Cuddi's MCRA claims against Kitchen, Etc. must fail as a matter of law.

Cuddi also charges MCRA violations against defendants Michaud, White and Doherty in Counts XI and XV. Specifically, he describes two incidents: the first in which defendant Doherty approached him in the back room of the store and unbuckled his belt and unzipped his pants stating, "this is what you called me back here for . . . this is what you want," and the second when defendant White came into the back room and said in the presence of Cuddi, Michaud and Doherty, "I heard a gay guy was screwing in the back room and I wanted to see how a gay guy screwed." Cuddi also asserts that sexually harassing comments and conduct of this sort occurred on a daily basis. The defendants urge this court to dismiss this claim because, like the claim against Kitchen, Etc., these instances do not rise to the level of threatening, intimidating, or coercive conduct under MCRA as interpreted by the Supreme Judicial Court.

The Supreme Judicial [*10] Court noted in *Buster* that sexual harassment can rise to the level of "coercion" within the meaning of MCRA where the harassment makes it impossible for a victim to continue her employment. 438 Mass. at 647. However, the Court specifically pointed to a case in which a supervisor repeatedly and aggressively made clear that an employee's job was in jeopardy if she did not accede to his overt sexual advances. *O'Connell v. Chasdi*, 400 Mass. 686, 694, 511 N.E.2d 349 (1987). In contrast, Cuddi does not allege the defendants physically threatened him or that the defendants exerted any force, physical or moral, which constrained him to "do against his will something he would not otherwise have done." See *Buster*, 438 Mass. at 646.

Accordingly, the court concludes that these incidents do not rise to the level of threatening, intimidating, or coercive acts actionable under the MCRA, and the defendants' motion to dismiss Counts II, IV, XI and XV is allowed.

II.

Counts VI and VII of the Complaint charge defendant Kitchen, Etc. with negligent and intentional infliction of emotional distress. Counts XII and XIII charge defendants Michaud, White and Doherty [*11] with intentional and reckless infliction of emotional distress. The defendants have moved to dismiss these claims on the ground that they are barred by the Workers' Compensation Act. G.L.c. 152, § 24.

It is well settled law that actions for negligent and intentional infliction of emotional distress against an employer are barred by the exclusivity clause of the Workers' Compensation Act. G.L.c. 152, § 24; *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558, 664 N.E.2d 808 (1996); *Brown v. Nutter, McClennen & Fish*, 45 Mass.App.Ct. 212, 214-15, 696 N.E.2d 953 (1998). Cuddi concedes this point in his brief. Accordingly, the defendants' motion to dismiss Counts VI and VII is allowed.

Counts XII and XIII of the complaint, in contrast, allege intentional and reckless infliction of emotional distress by the individual employees, Michaud, White and Doherty. The defendants likewise contend that these claims are barred by the Workers' Compensation Act.

Suits against individual employees are barred by the Workers' Compensation Act only if their conduct was within the scope of employment. *Anzalone v. Massachusetts Bay Transportation Authority*, 403 Mass. 119, 124, 526 N.E.2d 246 (1988); [*12] *O'Connell*, 400 Mass. at 690. If a fellow employee commits an intentional tort not related to the interests of the employer, the policies behind the Workers' Compensation Act would not be served by immunizing the co-employee. *O'Connell*, 400 Mass. at 690. Accordingly, in order for defendants Michaud, White and Doherty to be protected by the exclusivity provision of the Workers' Compensation Act, they would need to have been acting within the scope of their employment to further the interest of Kitchen, Etc. when they committed the alleged harassing conduct. See *Anzalone*, 403 Mass. at 124-25 (holding exclusivity provision barred claim of intentional infliction of emotional distress where complained-of conduct related wholly to defendant's position as plaintiff's supervisor and the manner in which he exercised his supervisory duties).

Accepting as true the factual allegations of the

Complaint, as well as any reasonable inferences which can be drawn therefrom in Cuddi's favor, the actions and comments of defendants Doherty, White and Michaud were not done or said in the course of their employment by, or in furtherance of the interests [*13] of Kitchen, Etc. The defendants' motion to dismiss Counts XII and XIII is denied.

III.

The defendants next contend that this court should dismiss either Count XII (intentional infliction of emotional distress) or Count XIII (reckless infliction of emotional distress) because there is no cognizable distinction between the two torts and the claims are redundant. The court agrees.

The elements for reckless infliction of emotional distress and intentional infliction of emotional distress are identical. *Bowman v. Heller*, 420 Mass. 517, 519 n.2, 651 N.E.2d 369 (1995). The Supreme Judicial Court has regularly lumped the two named torts together, referring to the tort as, "intentional or reckless infliction of emotional distress." See, e.g. *Bowman*, 420 Mass. at 519; *Nancy P. v. D'Amato*, 401 Mass. 516, 520, 517 N.E.2d 824 (1988); *Agis v. Howard Johnson Co.*, 371 Mass. 140, 143, 355 N.E.2d 315 (1976); see discussion in *Tilton v. Town Of Franklin*, 24 Mass.App.Ct. 110, 112, 506 N.E.2d 897 (1987). Because the tort of intentional infliction of emotional distress is the same as the tort of reckless infliction of emotional distress and both claims are brought against the [*14] same defendants for the same set of facts, the court will dismiss Count XIII (reckless infliction of emotional distress) and allow Cuddi to proceed with Count XII (intentional infliction of emotional distress).

IV.

The defendants have also moved to dismiss Count IX against defendants May, Taillion, Mayly and Camp for Cuddi's failure to first file a charge of discrimination with the MCAD under the specific requirements of G.L.c. 151B. The defendants argue that because Cuddi's MCAD charge named only one respondent, Kitchen, Etc., Cuddi's action against the individual defendants in this court must fail.

Massachusetts law requires that a discrimination action under G.L.c. 151B be preceded by a charge filed with the MCAD within six months of the discriminatory conduct. G.L.c. 151B, § 5. Regulations promulgated by the MCAD under G.L.c. 151B require that the charge contain, "appropriate identification of the Complaint(s) and the person(s) alleged to have committed unlawful discriminatory acts." 804 C.M.R. § 1.10(5)(d). The purpose of the filing requirement is to provide defendants with notice of a potential suit and an opportunity [*15] to investigate and conciliate the claim of discrimination. *Carter v. Commissioner of Correction*, 43 Mass.App.Ct. 212, 217, 681 N.E.2d 1255 (1997). Failure to file a charge with the MCAD bars recovery in a subsequent judicial action. *Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 673 N.E.2d 40 (1996). Although the Massachusetts appellate courts have not specifically decided this issue, the U.S. District Court, in interpreting Massachusetts law, concluded that a subsequent civil action would not be precluded if the individual party's conduct was put in issue by the MCAD charge and he had notice of and an opportunity to conciliate the charge. *Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. 228, 235 (D.Mass. 1997).

The MCAD charge here does not reference by name or title chief executive officer Robert Camp, vice president Ron Mayly, or benefits administrator Darlene Taillion, and therefore they had no notice or opportunity to conciliate the charge. Furthermore, while the charge describes the involvement of defendant May, it does not directly accuse her of engaging in the allegedly harassing or discriminatory conduct such that she would have sufficient [*16] notice or opportunity to conciliate the charge, especially where the charge named as defendant only Kitchen, Etc. May did not attend MCAD conciliation meetings or file affidavits with the MCAD. See *Lawler v. Malden Housing Authority*, Civil No. 98-2025 (Super.Ct. Oct. 20, 1998) (Dortch-Okara, J.) (9 Mass. L. Rptr. 491); *Kuketz v. MDC Fitness Corp.*, Civil No. 98-0114 (Super.Ct. August 10, 1998) (Chin, J.) (9 Mass. L. Rptr. 261). As such, there is no evidence that May should have had or did have notice of the charge or opportunity to conciliate.

Therefore, the defendants' motion to dismiss Count IX against the individual defendants is allowed. Because this count is dismissed against defendants May, Taillion, Mayly and Camp, it is unnecessary for the court to reach or determine their motion to dismiss of defendants Camp and Taillion, pursuant to Mass.R.Civ.P. 12(b)(2), for lack of personal jurisdiction over them.

ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss Pursuant to MRCP 12(b)(6) is *ALLOWED* as to Counts II, IV, VI, VII, IX, XI, XIII and XV, and is *DENIED* as to Count XII. The Defendant Robert Camp's and Darlene Taillon's [*17] Joint Motion to Dismiss Pursuant to MRCP 12(b)(2) is *DENIED* as moot.

Peter M. Lauriat Justice of the Superior Court

Dated: October 2003







# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

## SEXUAL HARASSMENT IN THE WORKPLACE GUIDELINES

Dorca I. Gomez, Chairwoman
Cynthia A. Tucker, Commissioner
Walter J. Sullivan, Jr., Commissioner
*Massachusetts Commission Against Discrimination,*
*Commonwealth of Massachusetts*
October 2, 2002

### I. INTRODUCTION[1]

Massachusetts Law prohibits sex discrimination in the workplace.[2] Sexual harassment is a form of sex discrimination. Sexual harassment is also prohibited in places of public accommodation,[3] educational facilities[4] and housing.[5] These guidelines address sexual harassment in the workplace only.

The standards governing the prohibition of sex discrimination and sexual harassment in the workplace are set forth in Massachusetts General Laws chapter 151B ("chapter 151B"). The Massachusetts Commission Against Discrimination ("MCAD" or the "Commission") issues these guidelines to assist employers, employees, attorneys and the general public in understanding what constitutes sexual harassment, as well as to explain what employees and employers should do to prevent, stop and appropriately respond to sexual harassment. In addition, these guidelines discuss the circumstances under which employers[6] and individuals may be held liable for sexual harassment in the workplace.

### II. SEXUAL HARASSMENT

#### A. Generally

There are two types of sexual harassment: *"quid pro quo"* harassment and "hostile work environment" harassment. They may occur independently or concurrently.

#### B. *Quid Pro Quo* Harassment

Chapter 151B defines "quid pro quo" sexual harassment as:

sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions.......[7]

To prove a claim for quid pro quo harassment, the employee must establish the following elements:

1. That the alleged harasser made sexual advances or sexual requests, or otherwise engaged in conduct of a sexual nature;
2. the sexual conduct was unwelcome;
3. he or she rejected such advances, requests or conduct; and
4. the terms or conditions of his or her employment were then adversely affected.[8]

or

1. That the alleged harasser made sexual advances or sexual requests, or otherwise engaged in conduct of a sexual nature;
2. the sexual conduct was unwelcome;

C. **Employer Is Liable for Sexual Harassment in Other Circumstances**

An employer may also be liable for sexual harassment committed by persons without actual or apparent supervisory authority, such as co workers.[56]The complainant must show that the employer either knew[57]or should have known [58]about the harassing conduct and failed to take prompt, effective and reasonable remedial action. [59]The respondent's obligation to take remedial action is discussed in greater detail in § VI(F), *infra.*

An employer may also be liable for the sexual harassment of its employees by certain non-employees, such as customers, [60]patients,[61]clients, [62] independent contractors or other acquaintances. [63]An employer may be held liable for the unlawful conduct of such non-employees when the employer knew or should have known about the conduct and failed to take prompt, effective and reasonable remedial action. The primary difference between employer liability for harassment perpetrated by co-workers and harassment committed by non-employees lies in the ability of the employer to control the conduct of the non-employees. The greater the employer's ability to control the non-employee's conduct, the more likely it will be found liable for that person's unlawful harassment. [64]

IV. **INDIVIDUAL LIABILITY FOR SEXUAL HARASSMENT**

An individual may be held liable for sexual harassment as an employer under M.G.L. c. 151B, § 4(1) and § 4(16A), or under M.G.L. c.151B, §§ 4(4A) and 4(5), which specifically prohibit "any person" from engaging in certain types of discriminatory conduct.[65]

A. **Individuals May Be Liable as the Employer**

When an individual is the employer, rather than merely an agent of the employer, the individual may be liable under chapter 151B, § 4(1) and § 4(16A), which prohibit unlawful sexual harassment on the part of an employer. Depending on the size, nature and form of the business, an individual may be so closely identified with the business entity that the individual is personally liable as the employer.[66]This may apply to principals, owners, presidents or partners in a business.[67]

B. **Individuals May Be Liable Under Chapter 151B, § 4(4A)**

Chapter 151B, § 4(4A) states that it is an unlawful practice:

for *any person* to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter.(emphasis supplied).

Individuals may be subject to liability under § 4(4A) for engaging in sexually harassing conduct.[68] Both supervisors and co-workers may be liable under this section for engaging in sexually harassing conduct. [69]Furthermore, the Commission has held that an individual may be liable even in circumstances where the employer is not subject to liability. [70]Section 4(4A) even reaches the conduct of a third party, non-employee who sexually harasses an employee.[71]

C. **Individuals May Be Liable Under Chapter 151B, § 4(5) ("Aiding and Abetting" Liability)**

Chapter 151B, § 4(5) states that it is an unlawful practice:

for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.

Under the language of § 4(5), any individual - including employees of respondents and third parties - who actively perpetrates or assists another in acts prohibited by chapter 151B can be held separately liable as an aider and abettor.[72]The tripartite standard for determining "aider and abettor" liability is:

- The wrongful act must be separate and distinct from the underlying claim or an act in furtherance of the underlying claim;
- The aider and abettor shared an intent to discriminate not unlike that of the alleged principal offender; and
- The aider and abettor knew of his or her supporting role in an enterprise that deprived an individual of a right guaranteed under M.G.L. c. 151B.[73]

Inaction by an employee may, under certain circumstances, give rise to individual liability under § 4(5). For liability to attach in this circumstance, the individual must:

1. have knowledge of ongoing sexual harassment;
2. have an obligation and the authority to investigate and/or take remedial action;
3. intentionally fail to take such action; and
4. contribute to the complainant's injury by failing to act.[74]

"[I]n situations where the inaction of the employee results from 'deliberate indifference,' and not mere inattention or negligence, such nonfeasance 'is not mere inaction, but a designed and willful act of forbearance in a situation where action is required.'" [75]However, if the employee has no duty to intervene to stop the harassment and is not in a position to do so, he will not be subject to liability under § 4(5). [76]

An individual may only be liable as an aider or abettor when there is evidence of a joint enterprise between more than one participant.[77]The individual must have specific knowledge of his or her supporting role in the unlawful enterprise. [78]An individual may engage in a joint enterprise with the "fictional" legal entity of the respondent corporation - which possesses all of the legal attributes of a natural person - if that individual is in a position to subject the employer to vicarious liability. [79]

## V. EMPLOYERS' SEXUAL HARASSMENT POLICIES AND COMPLAINT PROCEDURES

### A. Sexual Harassment Policy

In Massachusetts, the law requires employers with six or more employees to adopt a written policy against sexual harassment.[80] The employer's policy must include notice to employees that sexual harassment in the workplace is unlawful and that it is unlawful to retaliate against an employee for filing a complaint of sexual harassment.[81]The policy should also assert the employer's commitment to investigate any complaint of sexual harassment. The Commission has prepared a Model Sexual Harassment Policy and a poster.[82]

The Commission recommends that an employer's policy include, at a minimum, all the requirements enumerated in chapter 151B and all the components of the Model Policy, as follows:

- a statement that sexual harassment in the workplace is unlawful;
- a statement that it is unlawful to retaliate against an employee for filing a complaint of sexual harassment, or for cooperating in an investigation of a complaint of sexual harassment;
- a description and examples of sexual harassment
- a statement of the potential consequences for employees who are found to have committed sexual harassment;
- a description of the process for filing internal complaints about sexual harassment and the work addresses and telephone numbers of the person or persons to whom complaints should be made; and
- the identity of the appropriate state and federal employment discrimination enforcement agencies and instructions as to how to contact such agencies.

Employers should specifically prohibit the dissemination of sexually explicit voice mail, e-mail, graphics, downloaded material or websites in the workplace and include these prohibitions in their workplace policies. [83]An employer must present new employees with a copy of the employer's policy upon commencement of employment and provide all employees with an individual written copy of the policy on a yearly basis.[84]Employers should also post the policy in a conspicuous area in the workplace.

### B. Sexual Harassment Training and Education

While not a requirement, chapter 151B encourages employers to conduct education and training programs on sexual harassment for all employees on a regular basis.[85]Employers are further advised to conduct additional training[86]for supervisory and managerial employees, which should address their specific responsibilities as well as the steps that such employees should take to ensure immediate and appropriate corrective action in addressing harassment complaints. [87]This is significant because employers are vicariously liable for the conduct of those persons that they place in supervisory positions.[88]

Employers should also train employees how to recognize and report incidents of sexual harassment. In claims alleging sexual harassment, an employer's commitment to providing anti-harassment training to its workforce may be a factor in determining

# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

## Sexual Harassment in the Workplace Guidelines

## ENDNOTES

[1] These guidelines will not answer every question concerning application of the laws regarding sexual harassment. The Commission issues these guidelines pursuant to its statutory authority to enforce the Commonwealth's anti-discrimination laws. This Commission exists to enforce Mass. Gen. L. ch. 151B and is not bound by federal law. However, "the Federal guidelines can be used to guide Massachusetts in interpreting G.L. c. 151B." *LaBonte v. Hutchins & Wheeler*, 424 Mass. 813, 823 n.13 (1997).

**Important note**: The case cites in the footnotes to these guidelines are provided for reference purposes only and in no way limit the Commission's ability to interpret the anti-discrimination laws

[2] Mass. Gen. Laws ch. 151B §4(1), (16A) (1996).

[3] Mass. Gen. Laws ch. 272, §92A, 98A (1996).

[4] Mass. Gen. Laws ch. 151C (1996).

[5] Mass. Gen. Laws ch. 151B §4 (1996).

[6] Mass. Gen. Laws ch. 151B, §1(5) (1996) (definition of employer).

[7] Mass. Gen. Laws ch. 151B§ 1(18)(a) (1996).

[8] *See, e.g., Hinojosa v. Durkee*, 19 MDLR 14, 16 (1997); Mass. Gen. Laws ch. 151B §1(18)(a) (1996).

[9] *Meritor Sav. Bank, FSB v. Vinson*, 106 S. Ct 2399, 2406 (1986); Mass. Gen. Laws ch. 151B§1(18)(a); 42 U.S.C. §2000e *et seq*.

[10] Although these Guidelines use a female pronoun to refer to the "complainant" or the victim of sexual harassment, a victim can be of either sex, and harassment can occur between people of the same sex.

[11] *See, e.g., Richards v. Walter Fernald State School*, 2000 WL 1473024 at *3 (Mass. Super. Ct. July 31, 2000) (where the court denied summary judgment on a *quid pro quo* claim as a jury could find an encounter in which plaintiff's supervisor said he would "forget all about" the problem of plaintiff not signing a memo if she would "go out" with him amounted to *quid pro quo* sexual harassment).

[12] An employer may also be liable for *quid pro quo* sexual harassment if an employee loses an opportunity or benefit to another employee because of the other employee's submission to sexual advances or requests for sexual favors. *See* EEOC Sexual Harassment Guidelines, 29 CFR 1604.11(g).

[13] *Timko v. City of Boston*, 1994 WL 879866, at *12 (Mass. Super. Ct. Aug. 1, 1994).

[14] *Shanley v. Pub 106, Inc.*, 22 MDLR 333, 336 (2000).

[15] *Id.* at 336.

[16] *Bradbury v. The Elbow Room*, 18 MDLR 107, 108 (1996). *See also Richards*, 2000 WL 1473024, at *3 (complainant could base quid pro quo claim on supervisor's request that she "go out" with him).

[17] *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 504-05 (2001); *Abramian v. President and Fellows of Harvard College*, 432 Mass. 107, 116-17 (2000).

[57] Actual knowledge is most commonly established by demonstrating that the employee informed a supervisory level employee of the alleged harassment. *See, e.g., Jordan v. Prime Laminating, Inc.*, 22 MDLR 151, 153 (2000).

[58] The employer may be held liable when it is on constructive notice of unlawful conduct, or when it "should have known" of the conduct. See, e.g., *Parent v. Spectro Coating Corp.*, 22 MDLR 221, 225-26 (2000). *Cf. Gilman v. Instructional Systems, Inc.*, 22 MDLR 237, 241 (the complainant failed to prove that respondent "knew or should have known" about harassment allegedly perpetrated by her co-worker because she never informed her supervisor and, the only person she did inform was another co-worker).

[59] *See, e.g., Beldo v. Univ. of Massachusetts Boston*, 20 MDLR 105, 111 (1998); Richards, 16 MDLR at 1668-69; *Parent*, 22 MDLR at 225-6; *Rounds v. Dep't. of Corrections*, 19 MDLR 90, 100 (1997); *Russell v. Hillcrest Educational Centers, Inc.*, 23 MDLR 91, 95-96 (2001).

[60] *Rodriguez-Hernandez v. Miranda- Velez*, 132 F.3d 848, 854 (1st Cir. 1998) (customer has no liability, but employer liable for discharging plaintiff after she complained of sexual harassment by customer); *Burman v. Boch Oldsmobile, Inc.*, 1995 WL 809940 at *4 (Mass. Super. Ct. Apr. 11, 1995). *See, e.g., Folkerson v. Circus Enterprises, Inc.* 107 F.3d 754, 756 (9th Cir. 1997); *Powell v. Las Vegas Hilton Corp.*, 841 F. Supp. 1024, 1028 (D. Nev. 1992).

[61] *Ligenza v. Genesis Health Ventures of Massachusetts, Inc.*, 995 F. Supp. 226, 230-31 (D. Mass. 1998).

[62] *See, e.g., Handy v. North End Community Health Center, Inc.*, 21 MDLR 37, 38 (1999).

[63] *Fiske v. R.P. Liquor, Inc.*, 16 MDLR 1042, 1049-50 (1994) (company liable for hostile work environment caused by a friend of the owner).

[64] *Handy*, 21 MDLR at 38 (Commission concluded that respondent was not liable for the conduct of a client because it had insufficient control over client and took measured and reasonable steps to alleviate the harassing conduct).

[65] *Beaupre v. Cliff Smith & Associates*, 50 Mass. App. Ct. 480, 490-91 (2000) (employer's president individually liable for both *quid pro quo* and hostile work environment sexual harassment; plain language of the statute provides on its face for individual personal liability for unlawful sexual harassment actively perpetrated by president himself); *Ruffino v. State Street Bank and Trust Co.*, 908 F. Supp. 1019, 1048 (D. Mass. 1995).

[66] *Raffurty v. Keyland Corp.*, 22 MDLR 125, 127 (2000) (president and owner of employer corporation who made such persistent verbal and physical sexual overtures to employee that she was finally compelled to quit held personally liable for hostile work environment sexual harassment; corporation also vicariously liable).

[67] *MCAD v. Medical Weight Loss Center, Inc.*, 23 MDLR 5, 12 (2001) (owner held individually liable where he coerced, intimidated, interfered with, and retaliated against the complainant in the exercise of her right to be free from harassment based on her sex and sexual orientation).

[68] *Compare Deeter v. Bravo's Pizzeria and Restaurant*, 23 MDLR 167 (2001) *with Rushford v. Bravo's Pizzeria and Restaurant*, 23 MDLR 171 (2001); *see also Doucimo v. S & S Corp.*, 22 MDLR 81, 87 (2000); *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 61 (D. Mass. 1997). An individual person can also be liable for acts of retaliation under § 4(4). *See Bain v. City of Springfield*, 424 Mass. 758, 765 (1997) (mayor's directive to "get rid of" plaintiff after she complained about discriminatory behavior was retaliatory and mayor could be held individually liable); *Kelley*, 22 MDLR at 217 (complainant won damage award against department and individuals for unlawful retaliation because the individuals had participated in, were aware of, or could have prevented the retaliatory conduct). This same rationale applies in the context of other prohibited forms of discrimination. *Bendell v. Lemax, Inc.*, 22 MDLR 259, 263 (2000) (company president held individually liable under ch. 151B, § 4(4A) for interfering with complainant's right to be free from unlawful discrimination when he terminated her because of her disability).

[69] *Rosati v. Town of Warren Bd. of Health*, 19 MDLR 34, 38 (1997); *Carney v. Town of Falmouth Police Department*, 16 MDLR 1444, 1455-56 (1994), *aff'd* 17 MDLR 1280 (1995) (Full Comm'n); *Morehouse*, 989 F. Supp. at 63-64.

[70] *Tunstall v. Acticell H'W Cosmetics*, 22 MDLR 284, 287-88 (2000).

[71] *Erewa v. Reis*, 20 MDLR 36, 38 (1998).

[72] See *Harmon v. Malden Hosp.*, 19 MDLR 157, 157-58 (1997), *See also Murray v. Sharp Air Freight Services, Inc.*, 2000 WL 33170935, at

*4 (Mass. Super. Ct. Dec. 5, 2000); *Hope v. San Ran, Inc.*, 8 MDLR 1195, 1211, aff'd, 8 MDLR 1277 (1986). *Cf. Hennessy v. Perico, Inc.*, 1999 WL 515078 at *1 (Mass. Super. Ct. May 20, 1999).

[73] *See Murray*, 2000 WL 33170935, at *4 (*citing Harmon*).

[74] *Harmon*, 19 MDLR at 158; *Chapin v. University of Massachusetts at Lowell*, 977 F. Supp. 72, 80 (D. Mass. 1997).

[75] *LeClerc v. Interstate Distrib. Div. of Hudson News Co.*, 2000 WL 33170694 at *10 (Mass. Super. Ct. Aug. 31, 2000), *citing Chapin*, 977 F.Supp. at 77-80.

[76] *Morehouse*, 989 F. Supp. at 61-62.

[77] *See, e.g., DeBarboza v. Cablevision of Boston, Inc.*, 1999 WL 65489, at *2 (Mass. Super. Ct. Jan. 29, 1999) (although court held that corporate defendant could be held liable as an aider and abettor, it dismissed the claim because the plaintiff failed to allege the person or persons that the corporation allegedly aided or abetted).

[78] *Beaupre*, 50 Mass. App. Ct. at 495 n.23 (noting that the actor must be found to have the requisite intent to discriminate in order to be liable for aiding and abetting); *Urrea*, slip op. at 6, supra note 57; *Harmon*, 19 MDLR at 158. *Compare Russell v. Hillcrest Educational Centers, Inc.*, 23 MDLR 91, 96 (2001) (aiding and abetting claim dismissed due to lack of evidence demonstrating respondent's agents had knowledge of the harasser's conduct and intended to assist the harasser in his alleged unlawful actions).

[79] *See, e.g., Beaupre*, 50 Mass. App. Ct. at 494-95 (president and controlling shareholder of respondent company held liable as an aider and abettor for acting jointly with the respondent company in both his separate acts of sexual harassment against the complainant, which the company is deemed vicariously to have authorized him to do, and in causing the company to sanction the complainant's demotion and subsequent constructive discharge), *citing Model Penal Code and Commentaries* § 2.06(2) (c), (3)(a) and comments 5-6; § 2.07(6) (a) and comment 7 (1980) (which makes a person "legally accountable for any conduct he performs or causes to be performed in the name of the corporation or in its behalf to the same extent as if it were performed in his own name or behalf" and "makes certain that the corporate agent will not escape liability because all or part of his conduct is performed through or in the name of the corporation").

[80] Mass. Gen. Laws ch.151B §3A (1996). As defined in §1 of the statute, covered employers are those companies that employ six or more employees. *See* Mass. Gen. Laws ch. 151B, §1(5) (1996).

[81] Mass.Gen.Laws ch. 151B §3A(b) (1996).

[82] Mass. Gen. Laws ch. 151B, §3A(b)(2) & (c) (1996). A copy of the MCAD Model Sexual Harassment Policy No. 96-2 and the poster can be obtained through the MCAD. The Model Policy is accessible online at http://www.state.ma.us/mcad/harassment.html. The Commission further recommends that employers establish an anti-harassment policy that clearly prohibits harassment based on all classes protected by the statute.

[83] Distribution of pornography may be part of the harassment. *Bowman v. Heller, aff'd in part and vacated in part by* 420 Mass. 577 (1995), 1993 WL 761159 at *7 (Mass. Super. Ct. Jul. 9, 1993), *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 572 (W.D.N.Y. 1987).

[84] Mass. Gen. Laws ch. 151B, §3A(b)(2) (1996). In addition, it is recommended that the employer post both the policy and the poster in a conspicuous area in the workplace.

[85] Mass. Gen. Laws ch. 151B, §3A(e) provides that employers are encouraged to conduct an education and training program for new employees within one year of commencement of employment. *See also* Charles Walker, *"An Ounce of Prevention...,"* MCAD Certified Discrimination Prevention Training Program, Sexual and Other Harassment Prevention Module, MCLE (2000-15-CM). In 1999, the Commission, in conjunction with the MCLE, initiated a program to train individuals to educate workforces on techniques to prevent discrimination in the workplace. A list of sexual harassment prevention trainers is available from the Commission.

[86] Mass. Gen. Laws ch. 151B, §3A(e) (1996). The training should make it clear that harassment based on the other protected categories violates Chapter 151B.

[87] *Id.* The statute provides that the additional training should be commenced within one year of employment for new managers and supervisors.