UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DONNA SAUNDERS,  :
  :
      Plaintiff,  :  Civil Action No. 05-10318 (NG)
  :
v.  :
  :
BENJAMIN STAPLES and  :
THE F.A. BARTLETT TREE  :
EXPERT CO., INC.,  :
  :
      Defendants.  :

**DECLARATION OF ANESSA ABRAMS, ESQUIRE, IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S MARCH 17, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

I, Anessa Abrams, hereby declare as follows:

1. I am an attorney of record for defendants Benjamin Staples ("Staples") and The F.A. Bartlett Tree Expert Co., Inc. ("Bartlett Tree") in the above-captioned action. I am making this declaration based on personal knowledge.

2. Attached hereto as Exhibit 1 is a true and correct copy of Exhibit 1 to plaintiff's complaint.

3. Attached hereto as Exhibit 2 is a true and correct copy of Exhibit 2 to plaintiff's complaint.

4. Bartlett Tree is incorporated under the laws of the State of Connecticut.

5. Bartlett Tree's principal place of business is located at 1290 E. Main Street, Stamford, Connecticut.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of March, 2005, in Washington, D.C.

_____
Anessa Abrams

BE3089

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

| | |
|---|---|
| MCAD DOCKET NUMBER: 03BEM00999 | EEOC/HUD CHARGE NUMBER: 16CA301472 |
| FILING DATE: 04/17/03 | VIOLATION DATE: 03/07/03 |

Name of Aggrieved Person or Organization:
Donna M. Saunders
133 Thatcher Road
Gloucester, MA 01930
Primary Phone: (978) 282-1957

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
F.A. Bartlett Tree Experts Co.
640 Hale Street
Beverly, MA 01915
Primary Phone: (978) 927-1590

No. of Employees:     25+

Work Location: Beverly Farms

Cause of Discrimination based on:
Sex, Sex discrimination / Sexual Harassment, Paragraph 4, Retaliation.

The particulars are:
I, Donna M. Saunders, the Complainant believe that I was discriminated against by F.A. Bartlett Tree Experts Co., on the basis of my sex (sexual Harassment), retaliated against and constructively discharged in in violation of M.G.L. 151B Section 4 Paragraphs 1, 4, 16A and Title VII.

SEE ATTACHED SEVEN PAGES

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

*[signature]*
(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 4/18/2003.

NOTARY PUBLIC: CAROL A. MOSCA
SIGNATURE NOTARY PUBLIC: *[signature]* Carol A. Mosca
MY COMMISSION EXPIRES:     9/4/2009

I started working at Bartlett Tree Experts, a.k.a., F. A. Bartlett Tree Expert, in Beverly Farms, MA. October of 2000. My job consisted of all administrative aspects of running the office. Among my other duties, I electronically submitted data such as work orders, billings, and time sheets to the corporate office in Stamford, CT for final processing.

The prevailing attitude in the work environment was very male-orientated. I believe that Bartlett subjected me, because I was a female and not out actually doing tree work, to an increasingly hostile and harassing work atmosphere that ultimately led me to resign from the company, and that the continued defamation of my character, with no basis in reality, is affecting my opportunities for employment.

Sexual Harassment

My position included working with 12 to 20 men at any time; I was aware of how sexually charged the atmosphere could be. I purposely dressed down, and tried to be "one of the boys". Most of the time, I acted as if the swearing, leering, and jokes didn't bother me. The foreman's room, which was down the hall from my office, and then moved to the other side of the garage, was full of girlie magazine and nude pictures on the wall. Some incidents I did find embarrassing and offensive:

- Picture of a man's crotch taped to my door.
- Statement that I was looking at Michael LaGuardia's butt while in the deli that was made in front of several crew members, and Michael to embarrass both of us.
- Pointing out a picture with three naked women and saying don't you wish you looked like that.
- Yelling "Fuck me in the mouth" throughout the building.
- Talking about women with large breasts over at the ice cream stand.
- Hole in the wall joining the two bathrooms that gave a clear view to my toilet. Was never fixed even after I requested it.

October 4, 2002: Notified Bob Bosley Bosley (2nd in charge at the local office) immediately following sexual assault by a current Bartlett employee, Todd Crandall. Todd had come back into the building 3 times while I was completing my work. He said it was time to go, then started talking about us going out back into the foreman's room. I thought he was joking until he stood in my way and kept insisting. I asked him for what and he said " you know, so we can get together". He kept insisting on this, I said Todd I'm going home. I got out the door and finally he came out before I locked it. He kept saying he couldn't believe I was teasing him and when were we going to get together. I got into my car and looked my doors. When I pulled out, Todd was walking down the



road to the right. His car was not on the premises, and the closest place for him to have parked in that direction was a considerable distance away. I told Bob Bosley what happened but asked him not to say anything until I returned. I left for a week's vacation the following morning.

October 11, 2002: I called Benjamin Staples from Florida and told him what happened. He asked a few questions, and then told me that Division had put an ad in the paper for my job position.

October 14, 2002: I almost didn't go in to work. I was told by Bob Bosley that Benjamin Staples had given everyone the day off, but when I called, I was told I didn't have the day off. After I arrived at the office, Benjamin Staples asked what I wanted to do about the incident. I said I didn't think I wanted to do anything as long as Todd Crandall was gone, we had enough problems with Division as it was. A short time after that, Todd Crandall came onto the property. I asked Benjamin Staples to go outside and meet him. Benjamin Staples came back and said Todd had admitted to the incident, and that he was sorry, he was drunk at the time. Then Benjamin Staples told me that Todd would be back later with workcards, and that he still had a key to the building and had been in it over the weekend. Generally, I was alone in the building most of each day. Benjamin Staples had stayed around that morning to talk with me. I called Benjamin Staples later in the afternoon and explained that I was really uncomfortable about Todd coming back to bring the cards. Benjamin Staples asked if I wanted him to call Todd and tell him not to. I said yes. This call was never made. From the minute Todd came on the property, I became nauseous and had a massive headache. I was crying off and on, very tense, and couldn't eat or sleep. I finally went to the doctor been put on a tranquilizer and an anti-inflammatory drug for stress. I notified Benjamin Staples that evening to follow proper procedures and that I would be making a written complaint. The complaint also addressed the hostile environment that has been created at this office by actions of Division over the past several months. I felt the atmosphere Division had created over the preceding five months had caused such damage and lack of pride in all the employees that Todd was not worried about any consequences from his actions; that he knew a crew member would always be backed over a female employee. Because of the conflicts with Division and knowledge that Division would hide the incident so that corporate was not aware of any problem, I emailed the complaint to the owner of the company, Robert Bartlett Jr; the corporate attorney, Fred Tobin; head of personnel, Vic Fleck; and the head of regulatory affairs, David Marren.

October 15, 2002: Phone calls were placed to my home and my cell phone by Benjamin Staples Staples around 7 a.m. When I returned the call, he asked me if I had really sent the email, screamed Jesus fucking Christ, and threw the phone across the office. I hung up and returned home instead of going to work. Benjamin Staples tried calling a few times later in the morning but I did not return the calls. I finally emailed him in the afternoon. When he called me back, we discussed what I the emailing of the complaint. When I asked him if anything I said was untrue, he said that it was the way I handled it, I shouldn't have let corporate know. He said he had not spoken to Division yet, but he didn't feel it was a good idea for me to come back into the office when I asked him if he



wanted me to quit. I asked him to speak to James Ingram and let me know what was said. When I didn't hear back, I sent the email stating unless notified otherwise, I would be there in the morning.

October 16, 2002: When I walked into my office, Paul Fletcher, the assistant Division Manager was there. Paul Fletcher, Benjamin Staples, and Bob Bosley went over to the deli next door and had a very public conversation regarding my complaints. When they came back, I was requested to attend a meeting. I was informed that Division would be in control and making all decisions for the office. I was not to have any contact with the corporate office directly. I was to call Nancy Peckham in the Divisional office, even for issues such as the computer crashing, which happened frequently. Corporate was not to know anything that went on unless Division decided to let them know.

As far as the sexual assault was concerned, I was told that the locks would be changed, and I would be able to lock the door from the inside. After the meeting, Paul Fletcher and Benjamin Staples left for several hours. When they returned, they went into Benjamin Staples's office and made phone calls, and together with James Ingram on the phone, put together the letter that I did not receive until October 18. About a half an hour later, I received the email from Vic Fleck regarding my complaint, which basically left everything in Division's hands. The letter signed by Benjamin Staples also informed me that I was only to talk to the crew members about business matters; I was not allowed to have any personal conversations with them. Paul Fletcher stated that maybe after everything calmed down, Division would remove some of the restrictions.

I was told I was to work 8 a.m.-12:00 p.m. and 1:00 p.m.-5 p.m. with no exceptions. When I discussed this with Benjamin Staples that as he knew, I could not be there by 8:00 because of putting the child on the bus, he told me not to worry about it.

Retaliation

October 16, 2002: My title was changed from Administrative Assistant to Secretary. I personally am very insulted by the title secretary, which all parties were well aware of. After a year of working for Bartlett, all the women who ran the offices titles' were changed to Administrative Assistant, and that is how we are listed in the personnel manual. Also, the "Careers with Bartlett" booklet lists Administrative Assistant for my position. Changing my title was a very purposeful and malicious way of punishing me for my complaint. Every person involved, and every one in my office knew that I was very insulted by the term secretary. The previous year, 85 woman's titles were changed from Secretary to Administrative Assistant, as demonstrated by the personnel manual issued on a yearly basis.

Paul Fletcher made a statement that James Ingram would probably be upset if he told me, but that James Ingram felt I was the victim of bad management practices. The way things were going to be handled in the future was to be different from the way they had been in the past. Paul Fletcher agreed that my work load in the Beverly Farms office required 45 hours a week, and that the restriction should eventually loosen up. He asked if I was

willing to give the changes a shot, I said I would try. From then until the day I resigned, I followed Paul Fletcher's instructions implicitly.

For the next two weeks, I received some communication daily from Division with a complaint or other issue. Around 8 a.m., 1 p.m., and 5 p.m. daily, I received a phone call that disconnected as soon as I answered. . I continued to have headaches, nausea, heartburn, throwing up, crying, and tenseness until months after I left. Any noise or person walking into the building made me jump. I was having a very difficult working because no matter what I did, some fault would be found with it by the Division office. During conversations with Benjamin Staples, he explained that he had to do anything Division said because he could not afford to lose his job.

October 21, 2002: I received a phone call from Nancy Peckham asking who had authorized payment of Mark Lee's vacation pay (Mark had resigned effective 10/8/02 with vacation pay due, and had worked at Bartlett for several years). I explained that this issue had been dealt with before, and the State of Mass made it mandatory that accrued vacation time be paid. The payroll department had instructed me on October 15 to put anything over 40 hours on the next week's time sheet. Nancy Peckham and James Ingram made several phone calls and sent faxes to Benjamin Staples and me over the course of that week regarding the same issue. James Ingram was upset that I did not call him for authorization before submitting the hours. I was told my handwriting could not be on any time sheet. (On every sheet, every week, I had to add information and corrections.)

October 28, 2002: During a conversation with Benjamin Staples, I stated that Division had set him up if I sued the company and to cover himself. I had not intention of doing anything, but the issues would keep occurring and Bartlett's sexual harassment policy was not sufficient. On my advice, he wrote the letter to Todd Crandall about not being on the property. As of the day I left, that letter had not been mailed.

October 29, 2002: My computer crashed and I sent Nancy Peckham an email regarding this. She called back several hours later asking why I hadn't called the corporate office. I explained that Paul Fletcher had told me specifically with this issue that I had to contact her. James Ingram called Benjamin Staples asking why I was bothering Nancy Peckham about such things, and Benjamin Staples told him that this was what Paul Fletcher had told me to do. James Ingram said that from now on, Paul Fletcher was to handle any communication with me. Nancy Peckham called Benjamin Staples again and told him "that I was missing phone calls because I was outside smoking, so she wanted my portable phone taken away." I asked Benjamin Staples if he thought the statement was a little ridiculous, and he said yes, it was childish, but took the phone. With the way the office was set up, it was impossible to efficiently handle the calls without the portable phone.



Resignation/Constructive Discharge

October 30, 2002: I became very ill on the way to work because of the on-going stress, and ended up going inside and throwing up. I then sat down and talked to Benjamin Staples and Bob Bosley. I asked Benjamin Staples if he agreed that I had been doing what he wanted since I started, and that for the past few weeks, I had been following the new rules that Paul Paul Fletcher had issued. Benjamin Staples stated several times that yes I had, I was an excellent employee, and he was sorry about everything that happened. I told Benjamin Staples that I had had enough, what Nancy Peckham had pulled the day before went beyond childish. I stated that we were both aware that Division wanted me out, so I was leaving but I wanted severance pay and unemployment until I started feeling better and could find another position. If it was fought, I would subpoena James Ingram, Paul Fletcher, Nancy Peckham, along with Benjamin Staples in front of the unemployment board. I asked if he wanted me to stay for two weeks to give him a chance to get a replacement in. Benjamin Staples agreed with everything I said, and said he would try to get what I wanted. He didn't feel I was in any condition to stay. Within an hour, I found out the Division had agreed to my request. Benjamin Staples told me that the excuse they wanted to use was that my job position no longer existed. Until receiving my personnel file on 3/7/03, I was not aware of what was actually written on my termination form. I believe that this was a very malicious and purposeful retaliation and had not basis in reality.

At the time I left, the lock still had not been installed on my office door; this was installed on February 7, 2003. I also had a conversation with Benjamin Staples the previous day, and suggested that he cover himself because Division had placed him in the position of being liable as my supervisor for the sexual harassment issue. This is when he wrote the letter to Todd Crandall about showing up on the property. The letter had not been mailed as of the day I resigned.

Defamation of Character

I've interviewed for several jobs. My qualifications easily matched their needs, and the appearance was that I had the position once they checked my reference from Bartlett and personal references. I never heard back from these companies. I was then informed that my "Change of Status Form" at Bartlett contained information that I should see. I stopped at the Beverly Farms office on January 30, 2003 to discuss this. (See A. below) I requested and was denied from Victor Fleck at the corporate office, my "Employee Change of Status Report". I needed to hire an attorney to obtain the copy.

1. My termination paper states that I have fair ability and fair character, and would not rehire. Todd Crandall's says that he is of good ability and good character, and would rehire; yet Todd was the person who sexually assaulted me, and his recent work performance was seriously deficient. In fact, if he hadn't given his notice when he did (prior to the attack), Benjamin Staples had planned on firing him.



2. The customary practice at the Beverly Farms office is for ex-employees to stop by and see the other employees. The only person ever notified in writing that he was not allowed on the property was Todd Crandall, after the sexual harassment incident. I had been in touch with Benjamin Staples Staples, both by phone and email, several times since I resigned from the company. Not once was I asked to stay away from the property.

January 30, 2003, Benjamin Staples Staple's car was parked outside the Beverly Farms office when I headed home from school. I stopped, went inside the building, walked to the doorway of his office, realized he wasn't in his office, and walked down to the other office and called out to Rosa _____, the woman who had assumed my position with the company. Rosa told me Benjamin Staples was in Osterville at a meeting, I asked her to tell him I had stopped by, and left. The following day I emailed Benjamin Staples about stopping by and that I was concerned about my reference. He emailed back that he had left a note regarding this on Rosa's desk.

February 8, 2003, I received a letter from Paul Paul Fletcher of the Division office, stating that I had been discovered on the premises when no one else was around and that I was not to be there again without an appointment, that this was a very serious matter. I spoke to two members of the production crew, John Page and Sean McCrae, and was informed that on February 7, 2003, a lock was installed on the inside of Rosa's door because "Rosa had come into the building and found someone going through Benjamin Staples' office and it scared the shit of her." The lock was installed to protect her.

I have met Rosa twice: January 30th, and a few weeks prior to that when I had stopped by, again when Benjamin Staples Staple's car was there. Two crew members were present at the time, Justin Faust and Michael LaGuardia; while I was speaking with them, Rosa poked her head out the door. I went to her office and introduced myself.

I believe Rosa made the statement that I was discovered in the building when no one was there. We have had no contact between us that should have been perceived in any way as hostile; therefore, statements must have been made by others to make her believe she has something to fear from me.

My "Employee Change of Status Report" dated October 31, 2002 states that I could not adhere to job responsibilities according to job description and that I am of <u>fair</u> character and <u>fair</u> ability. I challenge this. I have several items signed by Benjamin Staples that contain statements I am awesome, honest, and highly skilled. These papers are dated from within six months of my employment to a week after. I feel that the information on my termination paper is affecting my employment opportunities and is a serious insult to my integrity.


1. 03/09/01: Performance Review. *Administrative*. 2 pages with excellent for every category.

2. 04/18/01: Reference request from Beverly Hospital. Reads: *Office Manager*. "She's awesome, I couldn't do without her. She comes in early and leaves late."

3. 10/15/01 Raise request. Reads: *Secretary*. "Doing excellent job. Donna has helped Benjamin Staples turn around the office administration. She has also followed Division protocols extremely well". $.50/hour requested. Signed by James Ingram and Benjamin Staples. Granted.

4. 09/16/02 Raise request. Reads: *Administrative Assistant*. "Doing excellent job." $.50/hour requested. Denied.

5. 10/21/02: Form for me to apply for Certified Administrative Assistant Professional certification: Benjamin Staples wrote "excellent organizational skills and telephone/communication with customers. Resourceful and innovative."

6. 11/02/02 Reference letter from Benjamin Staples. "..diligent, hard working, creative, honest, and forthright."

January 22, 2003: I made three phone calls to Carmen Berrios after I left Bartlett regarding my 401K. On January 22, 2003, I called while with the financial officer at Citizen's Bank asking if there was a separate form that needed to be filled out to obtain my funds. Carmen told me no, just call Fidelity direct. She also stated that she would make sure that I was terminated in the system. I waited and on February 8th, this issue was included in the email that I sent to Vic Fleck and others. On February 10th, I was notified that I had finally been terminated in the system. On February 18th, I was sent a letter stating that the reason I did not have my funds was because I did not fill out a form. I called Fidelity the next day and my funds were released. During that last month, I lost almost $80.



On October 14, 2002, I emailed a written complaint to individuals at the corporate office regarding an incident on October 4th when I was sexually assaulted by another employee, and the hostile environment that I believed "Division" had encouraged at the Beverly Farms office, where I had been employed for the past two years. On October 15, 2002, Paul Fletcher from Division came up and met with me. Part of the outcome of the meeting was that my title was changed from Administrative Assistant to Secretary, my job responsibilities were changed, and I was not allowed to talk to the crew members (male) except for about business matters. (I was the only female in this location.) The sexual harassment policy of the company does not list office workers, and no further actions were taken on this. The atmosphere became increasingly hostile, and Division (Ingram and Peckham) continued to intentionally inflict emotional distress on me through phone calls and emails in an effort to force me to leave the company, which culminated in a constructive discharge on October 30, 2002, when I was under so much stress that I had consulted with a physician, and I no longer felt I could perform my job. On October 31, 2002, my supervisor, Benjamin Staples signed my "termination" paper which stated that I "could not adhere to job responsibilities according to job description" and that I was of fair character and fair ability. These statements are direct contradictions from written statements regarding my work performance signed by Ben Staples prior to and just after my resignation. Victor Fleck of the corporate office refused to send me this paper, and I had to hire an attorney to get it. My personnel file was finally received from the law firm of Schmeltzer, Aptaker, & Shepard in Washington, D.C. on March 6, 2003. The prevailing attitude toward the Administrative Assistants, who are traditionally female, is that they are easily replaceable and are not extended the pay and bonus opportunities as the crew members (male). A very similar situation (without a sexual assault) occurred in the Hooksett office two weeks after I left, forcing another woman to resign.

Donna M. Saunders
133 Thatcher Road
Gloucester, MA 01930
978-282-1957
978-944-0683

**COMPLAINANT**

---

F. A. Bartlett Tree Expert (corporate office)

Victor Fleck/VP Human Resources
1290 East Main Street
Stamford, CT 06905-0067
(203) 323-1131

Bartlett Tree Experts (Division office)
James Ingram/VP Division Manager
2964 Falmouth Road
Osterville, MA 02655
(508) 428-1282

Nancy Peckham/Division Administrative Assistant
2964 Falmouth Road
Osterville, MA 02655

Bartlett Tree Experts (Division office)
(508) 428-1282

Paul Fletcher/Assistant Division Manager
240 Highland Avenue
Seekonk, MA 02771-5898
(508) 336-8225

Bartlett Tree Experts (local office)
Benjamin Staples/Local Manager
640 Hale Street
Beverly Farms, MA 01915
(978) 927-1590

**COMPANY INFORMATION**

2

Case 1:05-cv-10318-NG    Document 17-3    Filed 03/22/2005    Page 1 of 3

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

MAY 20 2004

- DISMISSAL and NOTIFICATION of RIGHTS -

| To: | Ronald L. Brandt, Esq.<br>44 Washington Street<br>Wellesley Hills, MA 02481-1801 | Case: Donna M. Saunders v. F.A. Bartlett Tree Experts Co.<br>MCAD Docket Number: 03BEM00999<br>EEOC Number: 16CA301472<br>Investigator: Jessica Thrall |
|---|---|---|

Your complaint has been dismissed for the following reasons:

[ ]  The facts alleged fail to state a claim under any of the statutes the Commission enforces.

[ ]  Respondent employs less than the required number of employees.

[ ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]  The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]  The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[ ]  The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[x]  Other (briefly state) **Complainant has chosen to pursue the matter in Superior Court**

_____        5/20/04
Walter J. Sullivan Jr.            Date
Investigating Commissioner

Cc:

Victor B. Fleck, Esq
Schmeltzer, Aptaker & Shepard, PC
The Watergate
2600 Virginia Ave, NW, Suite 1000
Washington DC 20037-1922

MEMORANDUM

TO: File
FR: Jessica Thrall, Investigator
CASE: Saunders v. F.A. Bartlett Tree Service
MCAD NO: 031300999
EEOC NO: 16CA301472

RECOMMENDATION FOR DISMISSAL OF THE COMPLAINANT

ISSUES INVESTIGATED:

Whether Complainant was discriminated against on the basis of her sex (female), sexual harassment and retaliation in violation of M.G.L. chapter 151 B, section 4, Paragraph 1, 4, 16a and Title VII of the Civil Rights Act of 1964

SUMMARY OF FINDINGS:

On 4/18/03, Complainant filed a complaint with this Commission and the Equal Employment Opportunity Commission (EEOC) alleging unlawful discrimination on the basis of her sex (female), sexual harassment and retaliation.

On 5/19/04, the Commission received Complainant's formal request to dismiss the complaint with both the Commission and the EEOC because the Complainant has chosen to pursue the complaint in Superior Court, under Chapter 478. Complainant acknowledges that she is aware that it is unlawful for any person to coerce her into requesting this dismissal. Therefore, it is recommended that the Complainant's request be granted.

_____
Jessica Thrall
Investigator

_____
Jean Clanton
Supervisor