## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DONNA SAUNDERS,**<br>**Plaintiff** | ) |
| | ) |
| | ) |
| **v.** | )     **Civil Action No. 05-10318NG** |
| | ) |
| **BENJAMIN STAPLES and** | ) |
| **F. A. BARTLETT TREE** | ) |
| **EXPERTS, CO.,** | ) |
| **Defendants** | ) |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S MARCH 17, 2005 0RDER GRANTING PLAINTIFF'S MOTION TO REMAND

Now comes the Plaintiff, Donna Saunders, who respectfully opposes the Defendants' Motion for Reconsideration of Court's Order of March 17, 2005 Granting Plaintiff's Motion to Remand.

As grounds therefore, the Plaintiff states:

1.    This action was originally filed in the Essex County Superior Court on January 13, 2005 and removed to this Honorable Court by the Defendants on February 16, 2005.

2.    The basis for removal, pursuant to 28 U.S.C., sec. 1441, was the Plaintiff's claims pursuant to 42 U.S.C., sec. 2000e-(2)(a)(1) and (2), as set forth in Counts V and VI of the Complaint.

3.    Counts I, II, III and IV of the Plaintiff's Complaint were brought alleging violations of M.G.L. c. 151B, while Counts VII and VIII arose under the common law of Massachusetts.

4.    The Plaintiff has filed a voluntary dismissal of Counts V and VI, pursuant to Rule 41 (a)(1)(i) of the Federal Rule of Civil Procedure, with prejudice, which this Court entered on March 11, 2005.

5.    The Defendants do not oppose Voluntary Dismissal of the Plaintiff's federal claims.

6.    The Defendant, Benjamin Staples ("Staples") had ample notice of the claim(s) against him at the Massachusetts Commission Against Discrimination ("MCAD"), is repeatedly named in the Plaintiff's pro se submission to the MCAD (Exhibit 1,), as well as in the Defendants' Position Statement (Exhibit 2), and participated in a duly noticed Investigatory Conference in June 11, 2003 at the MCAD.

7.    As a result, Counts II and IV of the Plaintiff's Complaint are properly plead with due notice.

8.    The Defendants have not presented a cogent basis for this Court to reconsider its decision to allow remand of the remaining state claims to the Essex Superior Court.

In further support hereof, the Plaintiff respectfully submits her Affidavit and a Memorandum of Law.

**WHEREFORE,** the Plaintiff respectfully submits that the Defendant's Motion for Reconsideration must be denied.

Respectfully submitted,
Donna Saunders,
By her Attorney,

_____
Ronald L. Brandt
44 Washington Street
Wellesley, MA 02481
(781) 237-2227
BBO# 054170

Date:  April 4, 2005

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DONNA SAUNDERS, )
    Plaintiff )
)
      v. )    Civil Action No. 05-10318NG
)
BENJAMIN STAPLES and )
F. A. BARTLETT TREE )
EXPERTS, CO., )
    Defendants )

### AFFIDAVIT

Now comes Donna Saunders, being first duly sworn, who

deposes and says:

1.    I am the Plaintiff in the above-entitled matter and reside at 133 Thatcher Road, Gloucester, Essex County, Massachusetts.

2.    On October 3, 2002, I was sexually assaulted by a male employee of the F.A. Bartlett Tree Expert Co., Inc. (Bartlett) at the Beverly Farms office of the company.

3.    On October 11, 2002, I reported the assault to my immediate supervisor, Benjamin Staples.

4.    On October 14, 2002, I sent a written complaint to the local, divisional and corporate offices of Bartlett, including but not limited to, Benjamin Staples.

5.    Between October 14, 2002 and October 30, 2002, Defendant Benjamin Staples and I discussed his potential

liability for sexual harassment charges on at least two (2)
occasions.

6.     On October 31, 2002, Benjamin Staples signed my
"Change of Employee Status Form" which contained
defamatory statements and of which I did not receive a copy
until March 7, 2003

7.     The receipt of this form on March 7, 2003 initiated my
filing of the MCAD complaint #03BEM00999.

8.     On April 17, 2003, I was interviewed by an intake
worker   at   the   Massachusetts   Commission   Against
Discrimination   (MCAD)   with   regard   to   filing   a
discrimination complaint.

9.     The intake worker determined that only the
corporation, F.A. Bartlett Tree Expert Co. (Bartlett), 640
Hale Street, Beverly Farms, Essex County, Massachusetts,
needed to be named as respondent.

10.    The intake worker attached my seven pages of notes
that detailed events that occurred during my employment at
the F.A. Bartlett Tree Expert Co. and leading up to the filing
of the complaint.  She made the decision to list sex, sexual
harassment, retaliation, and constructive discharge as causes of
discrimination.

11.    The intake worker explained that MCAD could amend
this complaint as to causes and respondents any time up until
an Order issued.

12.    Benjamin Staples is specifically named as involved in
the discriminatory actions throughout my seven pages of
notes that were attached to the complaint.

13.    On June 11, 2003, the MCAD conducted an investigatory hearing before the MCAD investigator, Jessica Thrall.

14.    Present at that hearing on behalf of Bartlett was Attorney Gary Lieber; Victor Fleck of the corporate office Human Resources Department; Paul Fletcher, assistant vice president of the New England Division of F.A. Bartlett Tree Expert Co., Nancy Peckham, divisional administrative assistant; and Benjamin Staples, local manager of the Beverly Farms office at which I was employed.

15.    Jessica Thrall asked questions of all of the parties listed in Paragraph 14 about my allegations.

16.    Jessica Thrall specifically questioned Benjamin Staples with regard to his knowledge of pornographic material in the building, which he admitted.

17.    During the hearing, Attorney Lieber insisted that I repeat the offensive statements, "Fuck me in the mouth" and "You fucking cunt" that I allege were made on numerous occasions by Benjamin Staples while I was employed by Bartlett.

18.    Benjamin Staples confirmed to Jessica Thrall that he had made those statements.

19.    At the conclusion of this line of questioning, Jessica Thrall stated to all parties that although I had not made a complaint for hostile environment, the testimony presented had proved a hostile environment existed at the Beverly Farms office.

20.    Any and all references to M.G.L. c. 151B § 4(1B) in Superior Court Civil Action #05-CV00075 are inadvertent typographical errors. I do not allege age discrimination was

in any way involved in the actions of Benjamin Staples or F. A. Bartlett Tree Expert Co., Inc.

Signed under the penalties of perjury this the 4th day of April 2005.

Donna M. Saunders
Donna Saunders

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| **DONNA  SAUNDERS,** ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-10318NG** |
| ) | |
| **BENJAMIN STAPLES and** ) | |
| **F. A. BARTLETT TREE** ) | |
| **EXPERTS, CO.,** ) | |
| **Defendants** ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 17, 2005 ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

### I.  STATEMENT OF FACTS.

The Plaintiff respectfully submits this Memorandum of Law in support of her Opposition to the Defendants' Motion for Reconsideration.

### II.  SUPPLEMENTAL STATEMENT OF FACTS.

Although the Defendants filed their Answer on March 10, 2005, notice of the Answer was not electronically posted and the Plaintiff served with a copy of the Answer, until after March 11, 2005.   Nevertheless, the Defendants do not oppose dismissal of Counts V and VI, alleging violations of 42 U.S.C. sec. 2000e-(2)(a)(1), of the Plaintiff's Complaint (Defendants' Memorandum of Law, page 4).

The Plaintiff filed her original complaint pro se with the Massachusetts Commission Against Discrimination (MCAD), by preparing a lengthy summary of the events leading to her resignation from Bartlett, which was appended to the Complaint prepared by a staff member of the MCAD and incorporated by reference (Exhibit 1). The Defendant, Benjamin Staples, although not listed as a party by the MCAD, is named a total of forty four (44) times in the Plaintiff's summary. The Defendants' responsive Position Statement, submitted on or about May 27, 2003, (Exhibit 2) includes references to Staples by name on an additional eighteen (18) occasions.

Staples was the Local Manager of the Beverly Farms office and the Plaintiff's supervisor. The presence of pictures of nude women on the walls of the foreman's room were an obvious violation of workplace decorum under his supervision. The Plaintiff did seek to have the hole on the ladies room repaired to no avail (Exhibit 1, page 2). Her complaints as to Todd Crandall's egregious conduct were met with similar indifference, culminating in Staple's insensitivity to the Plaintiff being left alone with Crandall on his last day of work (Exhibit 1 page 3). Staples also clearly participated in various retaliatory actions against the Plaintiff following her complaint about Crandall's sexual harassment, including, but not limited to demotion and alteration/falsification of the Plaintiff's performance record (Exhibit 1, pages 4 and 6-8).

Moreover, Staples participated in an Investigatory Conference at the MCAD on June 11, 2003 before Investigator Jessica Thrall. As set forth in the Plaintiff's affidavit, Ms. Thrall questioned Mr. Staples and other employees of Bartlett who attended the conference.

## II. ARGUMENT.

### A.   THIS COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT ALLOWED THE PLAINTIFF'S MOTION TO REMAND AFTER VOLUNTARY DISMISSAL OF HER FEDERAL CLAIMS.

Like the Defendants in Commonwealth of Massachusetts v. V & M Management, Inc., 929 F.2d 830, 834 (1st Cir. 1991), Bartlett and Stapes "seek to transmogrify" the Court of Appeals decision in Ching v. Mitre Corp., 921 F.2d 11, 13 (1st Cir. 1990), where the Court held that after removal to the District Court, elimination of the federal claim after removal "will not defeat jurisdiction," into what amounts to an absolute bar to remand. In so doing, the Defendants fail to advance any reason to reconsider remand.

The determination to remand is discretionary with the Court, the exercise of which is guided by Carnegie-Mellon University v. Coholl, 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 780 (1988), in the application of the "principles of economy, convenience, fairness and comity." Comparison of Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40 (D.Mass. 2001) and Rodriguez v. Dorall Mortgage Corp., 57 F.3d 1168 (1st Cir. 1995),

demonstrate the parameters of those principles in determining whether remand is the appropriate exercise of the Court's discretion.

In Pedraza, the Court decided remand would be inappropriate, because the case was to far along in the process leading to trial. The action had been filed thirty (30) months earlier, substantial discovery had occurred following removal of the United States District Court, the Court had dealt with several discovery motions and the case had been scheduled for a Pretrial Conference. Id., at p. 45. In contrast, in Rodriguez, the Court determined remand was appropriate because "unfavorable disposition of the plaintiff's federal claims at the early stages of the suit, well before commencement of trial" without any action on the remaining claims was the most appropriate utilization of judicial responsibility for the case. Id., at p. 1177.

Judge Gorton recognized those principles in Pedraza, noting at pages 44-45:

> This result is not compelled by a lack of judicial power, as demonstrated by the discretionary language in [28 U.S.C.] sec. 1367(c). It signifies only that in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims.

Stated another way in Roche v. John Hancock Mutual Life Insurance Co., 81 F.3d 249, 257 (1st Cir. 1996), where the "litigation has matured well beyond

its nascent stages, discovery had closed, the summary judgment record was complete," the interests of judicial economy and fairness "tugged" in favor or retaining jurisdiction.

In this instance, the case is in its "nascent" stage.  Little more has been done to file suit and rule upon issues relating to dismissal of the Plaintiff's federal claims and remand.  Despite the Defendant's tongue in cheek accusation of forum shopping[1], like the Court in <u>Masdea v. Scholz</u>, 742 F.Supp. 713, 717 (D. Mass. 1990), because there has been no determination of facts or law central to the remaining claims, which have been pared to the state law claims, "principles of fairness and comity favor remanding this case to state court for resolution.  See also <u>Serafino v. Hasbro, Inc.</u>, 893 F.Supp. 104, 107 (D. Mass. 1995).

The Defendant's Motion for Reconsideration should therefore be denied.

**B.    STAPLES CONTENTION THAT HE WAS NOT NAMED IN THE MCAD COMPLAINT DOES NOT PROVIDE A BASIS FOR DISMISSAL OF THE CLAIMS AGAINST HIM OR A BASIS FOR RECISION OF THE REMAND DETERMMINATION.**

In a preview of his Motion for Dismissal and an effort by Bartlett to bootstrap this action into a diversity of citizenship claim warranting reversal of the remand, Staples contends that because he was not specifically named in

---

[1]   The choice of forum usually lies with the party initiating the action.  "The Plaintiff is the master of his complaint."  <u>Radlo v. Rhone-Poulenc</u>, 241 F.Supp. 2d 61, 64 (D.Mass. 2002).

the Plaintiff's MCAD Complaint, suit cannot properly be brought against him, ostensibly because of lack of notice. His contention ignores the forty-four (44) references to him by name in the Plaintiff's summary (Exhibit 1), which was incorporated by reference into the Complaint and that his own attorney referenced him by name on eighteen (18) occasions in the Position Statement filed with the MCAD (Exhibit 2). Moreover, as set forth in the Plaintiff's affidavit, Mr. Staples was a participant in the Investigatory Conference held at the MCAD in June 2003. Under any standard, Mr. Staples had ample notice of claims against him and the opportunity to conciliate those potential claims.

While the Plaintiff agrees that a complaint filed under M.G.L. c. 151B must contain sufficient information as to the substantive facts and persons alleged to have committed unlawful discriminatory acts. See 804 C.M.R., sec. 1.10(5)(d). The purpose of the requirement is to provide notice of a potential legal action and the opportunity to investigate and/or conciliate the matter. Carter v. Commissioner of Correction, 43 Mass. App. Ct. 212, 217, 681 N.E.2d 1255 (1997). See also Chapin v. University of Massachusetts at Lowell, 977 F. Supp. 72 (D. Mass. 1997). If the individual defendant's conduct is put into issue by the MCAD charge and the defendant had the opportunity to participate in the proceedings, a subsequent civil complaint

naming that individual as a party should not be precluded. <u>Chatman v.</u>
<u>Gentle Dental Center of Waltham</u>, 973 F. Supp. 228, 235 (D.Mass. 1997).

In this instance, Staples conduct was specifically placed in issue by the
Plaintiff's initial filing. Staples was her supervisor in the Beverly Farms Office
and the person to whom she was required to notify with regard to any
complaints or problems, including sexual harassment. Over the course of her
two (2) years of employment, the Plaintiff reported, among other issues, a
hole in the ladies room wall that allowed a clear view of a person on the toilet,
the existence of offensive pornographic material displayed in the employee's
lounge, and the various offensive and crude remarks uttered by the male
employees and Staples, none of which were not corrected during her
employment. She also reported the incident of Todd Crandall's attempted
sexual assault to Staples, informed him that she intended to file a harassment
complaint with corporate management and then endured his outburst when
she informed him she had made the complaint. Although, he was also aware
of the emotional impact these events had upon the plaintiff, he instructed her
to meet Crandall alone after the incident to process his resignation. She
further noted his involvement in retaliatory actions following the complaint,
including demotion and the eventual alteration of her work record. As set
forth in her affidavit, Staples not only participated in the June 2003

Investigatory Conference, the investigating officer questioned him about several of the Plaintiff's allegations.

The Defendant, in essence, seeks a ruling in advance of its Motion to Dismiss, based upon the same grounds, in order to defeat remand of this action to the Court in which it originated. In so doing, the Defendant misstates the facts in an effort to convince the Court that he was unaware of the MCAD action and his potential liability. Given that between the Plaintiff and the Defendant's attorneys his name was referenced sixty-two (62) times in proceedings before the MCAD, and that those reference show him to be central to the allegations made by the Plaintiff, because he was her immediate supervisor and made aware of her complaints during her employment, there can be little doubt that Mr. Staples had ample and proper notice of his potential liability. As such, his inclusion in this action as a party in proper and appropriate.

Under these circumstances, the second prong of the Defendants' basis for seeking reconsideration of the decision to remand this case to the Essex Superior Court must fail.

## C.  DIVERSITY IS NOT IN ISSUE.

While the Plaintiff does not quarrel with the Defendants' assessment of the law of diversity of citizenship, without a basis for dismissal of Mr. Staples

as a party in this case, there is not a sufficient showing of diversity to prompt this Court's jurisdiction.

### III.  CONCLUSION.

Under all the circumstances, the Plaintiff respectfully prays that this Honorable Court deny the Defendants' Motion for Reconsideration of the Order Remanding this Case to the Essex Superior Court.

Respectfully submitted,
Donna Saunders,
By her Attorney,

_____
Ronald L. Brandt
44 Washington Street
Wellesley, MA 02481
(781) 237-2227
BBO# 054170

Date:  April 4, 2005

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
U.S. OFFICE

2005 JD -5 JD 2: 57

|  |  |  |
|---|---|---|
| **DONNA SAUNDERS,** | ) | U.S. DISTRICT COURT |
| **Plaintiff** | ) | DISTRICT OF MASS. |
|  | ) |  |
| **v.** | ) | **Civil Action No. 05-10318NG** |
|  | ) |  |
| **BENJAMIN STAPLES and** | ) |  |
| **F. A. BARTLETT TREE** | ) |  |
| **EXPERTS, CO.,** | ) |  |
| **Defendants** | ) |  |

### AFFIDAVIT

Now comes Ronald L. Brandt, being first duly sworn, who

deposes and says:

1.    I am an Attorney duly admitted to the Bar of the Commonwealth of Massachusetts and the United States District Court for Massachusetts.

2.    I am the attorney of record for the Plaintiff, Donna Saunders in the above captioned matter.

3.    Attached hereto as Exhibit 1 is a true and accurate copy of the Plaintiff's Complaint to the Massachusetts Commission against Discrimination (MCAD).

4.    Attached hereto as Exhibit 2 is a true and accurate copy of the Defendant's Position Statement submitted to the MCAD on or about May 17, 2003.

5.    These Exhibits are submitted in support of the Plaintiff's Opposition to the Defendant's Motion for Reconsideration of Court's March 17, 2005 Order Granting Plaintiff's Motion to Remand.

6. The Plaintiff's Opposition, Affidavit and Memorandum of Law were submitted electronically on April 5, 2005 at 11:29 a.m.

7. The attached exhibits were too large to be submitted electronically.

Signed under the penalties of perjury this the 5th day of April 2005.

Ronald L. Brandt

## CERTIFICATE OF SERVICE

I, Ronald L. Brandt, Attorney for the Plaintiff, hereby certify that I served a copy of the Plaintiff's Affidavit of Counsel and Exhibits 1 and 2 in Support of the Plaintiff's Opposition to the Defendant's Motion for Reconsideration of the Order Granting Remand upon the Defendants by class mail, postage prepaid to:

> Anessa Abrams, Esq.
> Eric L. Yaffe, Esq.,
> Gary L. Lieber, Esq.
> Schmeltzer, Aptaker & Shepard, P.C.
> 2600 Virginia Avenue, Northwest, Suite 1000
> Washington, D.C. 20037-1922

Signed under the pains and penalties of perjury, this the 5th day of April 2005.

Ronald L. Brandt

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place , Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

| | |
|---|---|
| MCAD DOCKET NUMBER: 03BEM00999 | EEOC/HUD CHARGE NUMBER: 16CA301472 |
| FILING DATE: 04/17/03 | VIOLATION DATE: 03/07/03 |

Name of Aggrieved Person or Organization:
Donna M. Saunders
133 Thatcher Road
Gloucester, MA 01930
Primary Phone: (978) 282-1957

Named is the employer, labor organization, employment agency, or state/local government agency who
discriminated against me:
F.A. Bartlett Tree Experts Co.
640 Hale Street
Beverly, MA 01915
Primary Phone: (978) 927-1590

No. of Employees:         25+

Work Location: Beverly Farms

Cause of Discrimination based on:
Sex, Sex discrimination / Sexual Harassment, Paragraph 4, Retaliation.

The particulars are:
I, Donna M. Saunders, the Complainant believe that I was discriminated against by F.A. Bartlett Tree
Experts Co., on the basis of my sex (sexual Harassment), retaliated against and constructively discharged in
in violation of M.G.L. 151B Section 4 Paragraphs 1, 4, 16A and Title VII.

SEE ATTACHED SEVEN PAGES

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information
and belief.

*Donna M. Saunders*
(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 4/18/2003.

NOTARY PUBLIC: *Carol A. Mosca*

SIGNATURE NOTARY PUBLIC: *Carol a. Mosca*
MY COMMISSION EXPIRES:      9/4/2009

MCAD Docket Number 03BEM00999, Complaint

031300999

I started working at Bartlett Tree Experts, a.k.a., F. A. Bartlett Tree Expert, in Beverly Farms, MA October of 2000. My job consisted of all administrative aspects of running the office. Among my other duties, I electronically submitted data such as work orders, billings, and time sheets to the corporate office in Stamford, CT for final processing.

The prevailing attitude in the work environment was very male-orientated. I believe that Bartlett subjected me, because I was a female and not out actually doing tree work, to an increasingly hostile and harassing work atmosphere that ultimately led me to resign from the company, and that the continued defamation of my character, with no basis in reality, is affecting my opportunities for employment.

<u>Sexual Harassment</u>

My position included working with 12 to 20 men at any time; I was aware of how sexually charged the atmosphere could be. I purposely dressed down, and tried to be "one of the boys". Most of the time, I acted as if the swearing, leering, and jokes didn't bother me. The foreman's room, which was down the hall from my office, and then moved to the other side of the garage, was full of girlie magazine and nude pictures on the wall. Some incidents I did find embarrassing and offensive:

- Picture of a man's crotch taped to my door.
- Statement that I was looking at Michael LaGuardia's butt while in the deli that was made in front of several crew members, and Michael to embarrass both of us.
- Pointing out a picture with three naked women and saying don't you wish you looked like that.
- Yelling "Fuck me in the mouth" throughout the building.
- Talking about women with large breasts over at the ice cream stand.
- Hole in the wall joining the two bathrooms that gave a clear view to my toilet. Was never fixed even after I requested it.

October 4, 2002: Notified Bob Bosley Bosley (2nd in charge at the local office) immediately following sexual assault by a current Bartlett employee, Todd Crandall. Todd had come back into the building 3 times while I was completing my work. He said it was time to go, then started talking about us going out back into the foreman's room. I thought he was joking until he stood in my way and kept insisting. I asked him for what and he said " you know, so we can get together". He kept insisting on this, I said Todd I'm going home. I got out the door and finally he came out before I locked it. He kept saying he couldn't believe I was teasing him and when were we going to get together. I got into my car and looked my doors. When I pulled out, Todd was walking down the



road to the right. His car was not on the premises, and the closest place for him to have parked in that direction was a considerable distance away. I told Bob Bosley what happened but asked him not to say anything until I returned. I left for a week's vacation the following morning.

October 11, 2002: I called Benjamin Staples from Florida and told him what happened. He asked a few questions, and then told me that Division had put an ad in the paper for my job position.

October 14, 2002: I almost didn't go in to work. I was told by Bob Bosley that Benjamin Staples had given everyone the day off, but when I called, I was told I didn't have the day off. After I arrived at the office, Benjamin Staples asked what I wanted to do about the incident. I said I didn't think I wanted to do anything as long as Todd Crandall was gone, we had enough problems with Division as it was. A short time after that, Todd Crandall came onto the property. I asked Benjamin Staples to go outside and meet him. Benjamin Staples came back and said Todd had admitted to the incident, and that he was sorry, he was drunk at the time. Then Benjamin Staples told me that Todd would be back later with workcards, and that he still had a key to the building and had been in it over the weekend. Generally, I was alone in the building most of each day. Benjamin Staples had stayed around that morning to talk with me. I called Benjamin Staples later in the afternoon and explained that I was really uncomfortable about Todd coming back to bring the cards. Benjamin Staples asked if I wanted him to call Todd and tell him not to. I said yes. This call was never made. From the minute Todd came on the property, I became nauseous and had a massive headache. I was crying off and on, very tense, and couldn't eat or sleep. I finally went to the doctor been put on a tranquilizer and an anti-inflammatory drug for stress. I notified Benjamin Staples that evening to follow proper procedures and that I would be making a written complaint. The complaint also addressed the hostile environment that has been created at this office by actions of Division over the past several months. I felt the atmosphere Division had created over the preceding five months had caused such damage and lack of pride in all the employees that Todd was not worried about any consequences from his actions; that he knew a crew member would always be backed over a female employee. Because of the conflicts with Division and knowledge that Division would hide the incident so that corporate was not aware of any problem, I emailed the complaint to the owner of the company, Robert Bartlett Jr; the corporate attorney, Fred Tobin; head of personnel, Vic Fleck; and the head of regulatory affairs, David Marren.

October 15, 2002: Phone calls were placed to my home and my cell phone by Benjamin Staples Staples around 7 a.m. When I returned the call, he asked me if I had really sent the email, screamed Jesus fucking Christ, and threw the phone across the office. I hung up and returned home instead of going to work. Benjamin Staples tried calling a few times later in the morning but I did not return the calls. I finally emailed him in the afternoon. When he called me back, we discussed what I the emailing of the complaint. When I asked him if anything I said was untrue, he said that it was the way I handled it, I shouldn't have let corporate know. He said he had not spoken to Division yet, but he didn't feel it was a good idea for me to come back into the office when I asked him if he



wanted me to quit. I asked him to speak to James Ingram and let me know what was said. When I didn't hear back, I sent the email stating unless notified otherwise, I would be there in the morning.

October 16, 2002: When I walked into my office, Paul Fletcher, the assistant Division Manager was there. Paul Fletcher, Benjamin Staples, and Bob Bosley went over to the deli next door and had a very public conversation regarding my complaints. When they came back, I was requested to attend a meeting. I was informed that Division would be in control and making all decisions for the office. I was not to have any contact with the corporate office directly. I was to call Nancy Peckham in the Divisional office, even for issues such as the computer crashing, which happened frequently. Corporate was not to know anything that went on unless Division decided to let them know.

As far as the sexual assault was concerned, I was told that the locks would be changed, and I would be able to lock the door from the inside. After the meeting, Paul Fletcher and Benjamin Staples left for several hours. When they returned, they went into Benjamin Staples's office and made phone calls, and together with James Ingram on the phone, put together the letter that I did not receive until October 18. About a half an hour later, I received the email from Vic Fleck regarding my complaint, which basically left everything in Division's hands. The letter signed by Benjamin Staples also informed me that I was only to talk to the crew members about business matters; I was not allowed to have any personal conversations with them. Paul Fletcher stated that maybe after everything calmed down, Division would remove some of the restrictions.

I was told I was to work 8 a.m.-12:00 p.m. and 1:00 p.m.-5 p.m. with no exceptions. When I discussed this with Benjamin Staples that as he knew, I could not be there by 8:00 because of putting the child on the bus, he told me not to worry about it.

Retaliation

October 16, 2002: My title was changed from Administrative Assistant to Secretary. I personally am very insulted by the title secretary, which all parties were well aware of. After a year of working for Bartlett, all the women who ran the offices titles' were changed to Administrative Assistant, and that is how we are listed in the personnel manual. Also, the "Careers with Bartlett" booklet lists Administrative Assistant for my position. Changing my title was a very purposeful and malicious way of punishing me for my complaint. Every person involved, and every one in my office knew that I was very insulted by the term secretary. The previous year, 85 woman's titles were changed from Secretary to Administrative Assistant, as demonstrated by the personnel manual issued on a yearly basis.

Paul Fletcher made a statement that James Ingram would probably be upset if he told me, but that James Ingram felt I was the victim of bad management practices. The way things were going to be handled in the future was to be different from the way they had been in the past. Paul Fletcher agreed that my work load in the Beverly Farms office required 45 hours a week, and that the restriction should eventually loosen up. He asked if I was

willing to give the changes a shot, I said I would try. From then until the day I resigned, I followed Paul Fletcher's instructions implicitly.

For the next two weeks, I received some communication daily from Division with a complaint or other issue. Around 8 a.m., 1 p.m., and 5 p.m. daily, I received a phone call that disconnected as soon as I answered. . . I continued to have headaches, nausea, heartburn, throwing up, crying, and tenseness until months after I left. Any noise or person walking into the building made me jump. I was having a very difficult working because no matter what I did, some fault would be found with it by the Division office. During conversations with Benjamin Staples, he explained that he had to do anything Division said because he could not afford to lose his job.

October 21, 2002: I received a phone call from Nancy Peckham asking who had authorized payment of Mark Lee's vacation pay (Mark had resigned effective 10/8/02 with vacation pay due, and had worked at Bartlett for several years). I explained that this issue had been dealt with before, and the State of Mass made it mandatory that accrued vacation time be paid. The payroll department had instructed me on October 15 to put anything over 40 hours on the next week's time sheet. Nancy Peckham and James Ingram made several phone calls and sent faxes to Benjamin Staples and me over the course of that week regarding the same issue. James Ingram was upset that I did not call him for authorization before submitting the hours. I was told my handwriting could not be on any time sheet. (On every sheet, every week, I had to add information and corrections.)

October 28, 2002: During a conversation with Benjamin Staples, I stated that Division had set him up if I sued the company and to cover himself. I had not intention of doing anything, but the issues would keep occurring and Bartlett's sexual harassment policy was not sufficient. On my advice, he wrote the letter to Todd Crandall about not being on the property. As of the day I left, that letter had not been mailed.

October 29, 2002: My computer crashed and I sent Nancy Peckham an email regarding this. She called back several hours later asking why I hadn't called the corporate office. I explained that Paul Fletcher had told me specifically with this issue that I had to contact her. James Ingram called Benjamin Staples asking why I was bothering Nancy Peckham about such things, and Benjamin Staples told him that this was what Paul Fletcher had told me to do. James Ingram said that from now on, Paul Fletcher was to handle any communication with me. Nancy Peckham called Benjamin Staples again and told him "that I was missing phone calls because I was outside smoking, so she wanted my portable phone taken away." I asked Benjamin Staples if he thought the statement was a little ridiculous, and he said yes, it was childish, but took the phone. With the way the office was set up, it was impossible to efficiently handle the calls without the portable phone.



## Resignation/Constructive Discharge

October 30, 2002: I became very ill on the way to work because of the on-going stress, and ended up going inside and throwing up. I then sat down and talked to Benjamin Staples and Bob Bosley. I asked Benjamin Staples if he agreed that I had been doing what he wanted since I started, and that for the past few weeks, I had been following the new rules that Paul Paul Fletcher had issued. Benjamin Staples stated several times that yes I had, I was an excellent employee, and he was sorry about everything that happened. I told Benjamin Staples that I had had enough, what Nancy Peckham had pulled the day before went beyond childish. I stated that we were both aware that Division wanted me out, so I was leaving but I wanted severance pay and unemployment until I started feeling better and could find another position If it was fought, I would subpoena James Ingram, Paul Fletcher, Nancy Peckham, along with Benjamin Staples in front of the unemployment board . I asked if he wanted me to stay for two weeks to give him a chance to get a replacement in. Benjamin Staples agreed with everything I said, and said he would try to get what I wanted. He didn't feel I was in any condition to stay. Within an hour, I found out the Division had agreed to my request. Benjamin Staples told me that the excuse they wanted to use was that my job position no longer existed. Until receiving my personnel file on 3/7/03, I was not aware of what was actually written on my termination form. I believe that this was a very malicious and purposeful retaliation and had not basis in reality.

At the time I left, the lock still had not been installed on my office door; this was installed on February 7, 2003. I also had a conversation with Benjamin Staples the previous day, and suggested that he cover himself because Division had placed him in the position of being liable as my supervisor for the sexual harassment issue. This is when he wrote the letter to Todd Crandall about showing up on the property. The letter had not been mailed as of the day I resigned.

## Defamation of Character

I've interviewed for several jobs. My qualifications easily matched their needs, and the appearance was that I had the position once they checked my reference from Bartlett and personal references. I never heard back from these companies. I was then informed that my "Change of Status Form" at Bartlett contained information that I should see. I stopped at the Beverly Farms office on January 30, 2003 to discuss this. (See A. below) I requested and was denied from Victor Fleck at the corporate office, my "Employee Change of Status Report". I needed to hire an attorney to obtain the copy.

1. My termination paper states that I have fair ability and fair character, and would not rehire. Todd Crandall's says that he is of good ability and good character, and would rehire; yet Todd was the person who sexually assaulted me, and his recent work performance was seriously deficient. In fact, if he hadn't given his notice when he did (prior to the attack), Benjamin Staples had planned on firing him.



2. The customary practice at the Beverly Farms office is for ex-employees to stop by
   and see the other employees. The only person ever notified in writing that he was
   not allowed on the property was Todd Crandall, after the sexual harassment
   incident. I had been in touch with Benjamin Staples Staples, both by phone and
   email, several times since I resigned from the company. Not once was I asked to
   stay away from the property.

January 30, 2003, Benjamin Staples Staple's car was parked outside the Beverly
Farms office when I headed home from school. I stopped, went inside the building,
walked to the doorway of his office, realized he wasn't in his office, and walked
down to the other office and called out to Rosa _____, the woman who had
assumed my position with the company. Rosa told me Benjamin Staples was in
Osterville at a meeting, I asked her to tell him I had stopped by, and left. The
following day I emailed Benjamin Staples about stopping by and that I was concerned
about my reference. He emailed back that he had left a note regarding this on Rosa's
desk.

February 8, 2003, I received a letter from Paul Paul Fletcher of the Division office,
stating that I had been discovered on the premises when no one else was around and
that I was not to be there again without an appointment, that this was a very serious
matter. I spoke to two members of the production crew, John Page and Sean McCrae,
and was informed that on February 7, 2003, a lock was installed on the inside of
Rosa's door because "Rosa had come into the building and found someone going
through Benjamin Staples' office and it scared the shit of her." The lock was
installed to protect her.

I have met Rosa twice: January 30th, and a few weeks prior to that when I had
stopped by, again when Benjamin Staples Staple's car was there. Two crew members
were present at the time, Justin Faust and Michael LaGuardia; while I was speaking
with them, Rosa poked her head out the door. I went to her office and introduced
myself.

I believe Rosa made the statement that I was discovered in the building when no one
was there. We have had no contact between us that should have been perceived in
any way as hostile; therefore, statements must have been made by others to make her
believe she has something to fear from me.

My "Employee Change of Status Report" dated October 31, 2002 states that I could
not adhere to job responsibilities according to job description and that I am of <u>fair</u>
character and <u>fair</u> ability. I challenge this. I have several items signed by Benjamin
Staples that contain statements I am awesome, honest, and highly skilled. These
papers are dated from within six months of my employment to a week after. I feel
that the information on my termination paper is affecting my employment
opportunities and is a serious insult to my integrity.



1. 03/09/01: Performance Review. *Administrative*. 2 pages with excellent for every category.

2. 04/18/01: Reference request from Beverly Hospital. Reads: *Office Manager*. "She's awesome, I couldn't do without her. She comes in early and leaves late."

3. 10/15/01 Raise request. Reads: *Secretary*. "Doing excellent job. Donna has helped Benjamin Staples turn around the office administration. She has also followed Division protocols extremely well". $.50/hour requested. Signed by James Ingram and Benjamin Staples. Granted.

4. 09/16/02 Raise request. Reads: *Administrative Assistant*. "Doing excellent job." $.50/hour requested. Denied.

5. 10/21/02: Form for me to apply for Certified Administrative Assistant Professional certification: Benjamin Staples wrote "excellent organizational skills and telephone/communication with customers. Resourceful and innovative."

6. 11/02/02 Reference letter from Benjamin Staples. "..diligent, hard working, creative, honest, and forthright."

January 22, 2003: I made three phone calls to Carmen Berrios after I left Bartlett regarding my 401K. On January 22, 2003, I called while with the financial officer at Citizen's Bank asking if there was a separate form that needed to be filled out to obtain my funds. Carmen told me no, just call Fidelity direct. She also stated that she would make sure that I was terminated in the system. I waited and on February 8th, this issue was included in the email that I sent to Vic Fleck and others. On February 10th, I was notified that I had finally been terminated in the system. On February 18th, I was sent a letter stating that the reason I did not have my funds was because I did not fill out a form. I called Fidelity the next day and my funds were released. During that last month, I lost almost $80.



On October 14, 2002, I emailed a written complaint to individuals at the corporate office regarding an incident on October 4th when I was sexually assaulted by another employee, and the hostile environment that I believed "Division" had encouraged at the Beverly Farms office, where I had been employed for the past two years. On October 15, 2002, Paul Fletcher from Division came up and met with me. Part of the outcome of the meeting was that my title was changed from Administrative Assistant to Secretary, my job responsibilities were changed, and I was not allowed to talk to the crew members (male) except for about business matters. (I was the only female in this location.) The sexual harassment policy of the company does not list office workers, and no further actions were taken on this. The atmosphere became increasingly hostile, and Division (Ingram and Peckham) continued to intentionally inflict emotional distress on me through phone calls and emails in an effort to force me to leave the company, which culminated in a constructive discharge on October 30, 2002, when I was under so much stress that I had consulted with a physician, and I no longer felt I could perform my job. On October 31, 2002, my supervisor, Benjamin Staples signed my "termination" paper which stated that I "could not adhere to job responsibilities according to job description" and that I was of fair character and fair ability. These statements are direct contradictions from written statements regarding my work performance signed by Ben Staples prior to and just after my resignation. Victor Fleck of the corporate office refused to send me this paper, and I had to hire an attorney to get it. My personnel file was finally received from the law firm of Schmeltzer, Aptaker, & Shepard in Washington, D.C. on March 6, 2003. The prevailing attitude toward the Administrative Assistants, who are traditionally female, is that they are easily replaceable and are not extended the pay and bonus opportunities as the crew members (male). A very similar situation (without a sexual assault) occurred in the Hooksett office two weeks after I left, forcing another woman to resign.

Donna M. Saunders
133 Thatcher Road
Gloucester, MA 01930
978-282-1957
978-944-0683                          **COMPLAINANT**

---

F. A. Bartlett Tree Expert (corporate office)

Victor Fleck/VP Human Resources
1290 East Main Street
Stamford, CT 06905-0067
(203) 323-1131

Bartlett Tree Experts (Division office)
James Ingram/VP Division Manager
2964 Falmouth Road
Osterville, MA 02655
(508) 428-1282

Nancy Peckham/Division Administrative Assistant
2964 Falmouth Road
Osterville, MA 02655

Bartlett Tree Experts (Division office)
(508) 428-1282

Paul Fletcher/Assistant Division Manager
240 Highland Avenue
Seekonk, MA 02771-5898
(508) 336-8225

Bartlett Tree Experts (local office)
Benjamin Staples/Local Manager
640 Hale Street
Beverly Farms, MA 01915
(978) 927-1590

**COMPANY INFORMATION**

IRA MICHAEL SHEPARD
J. THOMAS ESSLINGER
PAUL HEYLMAN
RALPH H. JOHNSON
GARY L. LIEBER
EDWARD R. LEVIN
ROBERT L. ZISK
ROBERT L. DUSTON
LEON B. TARANTO
MARK I. GRUHIN
J. ANTHONY "TONY" SMITH
HENRY A. PLATT
LYNN K. McKAY
MICHAEL C. WHITE
ANESSA ABRAMS
DAVID E. WORTHEN
KATHERINE BREWER
ERIC L. YAFFE
TÉRESE M. CONNERTON
CARLOS MATEO PAZ-SOLDAN
LINDA G. HILL

LOS ANGELES OFFICE
DANIEL P. BEN-ZVI
10880 WILSHIRE BLVD.
SUITE 2070
LOS ANGELES, CA 90024
(310) 234-5688

## SCHMELTZER, APTAKER & SHEPARD, P.C.

COUNSELORS AT LAW
THE WATERGATE
2600 VIRGINIA AVENUE, NORTHWEST, SUITE 1000
WASHINGTON, D.C. 20037-1922
WEB SITE http://www.sasiaw.com
E-MAIL sas@sasiaw.com
FAX (202) 337-5065
(202) 333-8800

May 27, 2003

STEVEN A. BROWNE*
ANNEMARIE BRENNAN RICE
ROLAND B. NINOMIYA
STEPHEN J. VAUGHAN
CHRISTOPHER N. LOVELAND
MICHAEL C. GRIFFIN
REBECCA A. HIRSELJ
NADA M. MOEINY
SCOTT T. MADSEN
CHRISTOPHER J. WALLACE
KAREN M. WHEELER
TONY S. LEE
TRISTAN B.L. SIEGEL
AMANDA K. GRACE*
EMILY K. HARGROVE*

COUNSEL
EDWARD SCHMELTZER
EDWARD APTAKER
STEPHEN HORN
JOHN A. McGUINN
DENISE BONN
MARTIN J. GAYNES
LARRY H. MITCHELL
JEFFREY L. KARLIN
JACK BUECHNER
PETER V. TAYLOR
*NOT ADMITTED IN D.C.

Jessica Thrall
Investigator
Massachusetts Commission Against Discrimination
One Ashburton Place
Boston, Massachusetts 02108

     Re:   *Donna Saunders v. F.A. Bartlett Tree Expert Co., Inc.*
         MCAD Docket No. 03BEM00999
         EEOC No. 16CA30472

Dear Ms. Thrall:

     This shall constitute the answer/position statement of respondent The F.A. Bartlett Tree Expert Co., Inc. The Company categorically denies that it discriminated against Ms. Saunders in any way and further denies that she was constructively terminated by the Company either because of the Company's alleged discrimination or because she was a victim of sexual harassment. Indeed, the facts disclose – as admitted by Ms. Saunders in her own email – that she *quit* because of an ongoing inability to work with the Company's Division office on matters exclusively related to her work duties and having nothing to do with her sex or any allegations of sexual harassment.

     Ms. Saunders was employed by the Company from October 23, 2000 until she quit on October 30, 2002. At the time she quit, she was the sole clerical employee at the Company's office in Beverly Farms, Massachusetts. The Company performs residential and commercial tree care services in more than twenty-five states and in

## SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 2

Canada, England and Ireland. The Company is headquartered in Stamford, Connecticut and organizationally is subdivided into nine divisions. The Beverly Farms office is within the New England Division whose headquarters is in Osterville, Massachusetts.

In her complaint, Ms. Saunders attempts to paint the picture that she was the victim of hostile work environment and of a particular incident of sexual harassment involving employee Todd Crandall. She further suggests that her cessation of employment is directly related to these events. This contention is completely false. First, Ms. Saunders *never* complained to any member of management regarding any of the six alleged incidents briefly described in the middle of page 1 of her complaint. Neither Ben Staples, the Company's Beverly Farms local manager, nor any other Company representative was aware of four of these incidents and they were not the subject of any complaint by any employee. The other two alleged incidents were not the subject of any complaint.[1]

The Company did conclude that Ms. Saunders was sexually harassed by Todd Crandall, a former employee, on October 4, 2002. Ms. Saunders originally reported this incident to Assistant Local Manager Bob Bosely on October 4, 2002. Ms. Saunders told Mr. Bosley that she did not want him to say anything to anybody about this as she was going on vacation and that she would talk to Mr. Staples when she returned from vacation. Ms. Saunders called Mr. Staples on October 11, 2002 while still on vacation and related the facts of the incident to him. Staples asked if she wanted him to do anything about the incident. She said no and that she would speak further with him about it when she returned from vacation on Monday, October 14, 2002. When she returned that day, she initially told Mr. Staples that she did not want to pursue the matter but later changed her mind when she called Staples after work on October 14 and said that she wanted him to pursue the matter through the appropriate Company channels.

---

[1]     The hole in the wall joining the two bathrooms was not what Ms. Saunders portrays it to be. The hole was nearly at floor level and did not give a clear view of the toilet. Moreover, Ms. Saunders never complained about it and management learned about it long after Ms. Saunders had quit.

SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 3

Ms. Saunders alleges that on October 15, 2003, Staples became angry when he learned that she had pursued the matter directly via email to the corporate office. Ms. Saunders implies that Staples was angry because she pursued the matter in the first place. This is a total mischaracterization of the facts but typical of the way Ms. Saunders has distorted the facts in attempting to link incidents of alleged sexual harassment to her cessation of employment when, in reality, there was no such linkage. The facts are that Mr. Staples was upset only because Ms. Saunders had earlier indicated that she wanted him to pursue the matter on her behalf and not because she wanted to pursue the matter in the first place.

On October 16, 2002, the Vice President of Human Resources sent Ms. Saunders an email expressing the Company's regret over the incident and noting that since Crandall had since resigned, the problem seemed to be resolved.[2] Mr. Fleck also stated, "If however any further incidents should occur, I STRONGLY ENCOURAGE you to make both your local office and your division office aware of it immediately." (Emphasis in original.) A copy of this email is attached as Exhibit 1. The Company has a strong policy against sexual harassment and has established procedures to deal with such incidents. This policy is articulated in the Company's Policies and Procedures which is maintained in each local office. A copy of this policy is attached as Exhibit 2.

Moreover, as alluded to above, none of these allegations relating to sexual harassment had anything to do with Saunders' cessation of employment. Rather, Saunders quit the Company at the end of October 2002 because of an ongoing failure to work cooperatively with the Division's office. Despite the clever wordsmithing contained in the complaint, suggesting a connection between her cessation of employment and protected conduct, Ms. Saunders' own words, contemporaneously

---

[2]     During the period between the incident on October 4, 2002 and Saunders' conversation with Staples on October 14, employee Crandall quit. Staples was not aware of the Saunders' incident prior to Crandall's termination. On October 14, when Crandall entered the office with some paperwork, Staples confronted him about the incident. Crandall admitted the incident occurred and blamed it on his drinking. Staples told Crandall he was no longer welcome on the property and that he had authorized Saunders to call the police if he returned.

Jessica Thrall
May 27, 2003
Page 4

crafted *before* she filed a charge, make it clear that the direct and proximate cause of her decision to quit was this strife with the Division over work-related procedures and *not* any protected conduct. Thus, before she filed the complaint on February 8, 2003, she wrote an email to Division and Corporate managers in which she stated, in pertinent part:

> When I quit the company, I left on good terms with my boss and crew. The issues were not with Beverly Farms, as you are well aware, but with what I considered harassment on the part of the Division.

A copy of this email is attached as Exhibit 3. A week earlier, on January 31, 2003, she had sent an email to Mr. Staples in which she expressed the same theme:

> I just want to make sure if any calls are received for a reference, that Rosa doesn't handle them. I don't want her giving Nancy's version of my leaving. I'm just saying I was unhappy (but not with the local office) and I decided to go back to school.

"Rosa" is her replacement and "Nancy" is Nancy Peckham, the Administrative Assistant from the Division office which whom she regularly had conflicts and disagreements. These emails make clear that the problems that caused her to quit had nothing to do with *sexual* harassment but rather with ongoing disputes with the Division that were entirely work related.[3] A copy of the January 31 email is attached as Exhibit 4.

---

[3]    That is not to say that Saunders does not think that the two are somewhat related. In her October 14, 2002, complaint which she sent to Staples with copies to the Company president and other officers, she declared:

> I believe that this incident of sexual harassment is directly related to the hostile work environment that has been caused as the result of actions from "Division", namely James Ingram and Nancy Peckham, over the last five months. I was reluctant to report this incident because of repercussions caused whenever any statement is made ... that does not have prior division approval, the mandate that I am not to contact corporate about

SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 5

Indeed, these conflicts with Division, which included issues relating to timely billing, compliance with Company policies and a consistent antagonistic approach to all interaction with Division, including her refusal to acknowledge any Company authority other than Mr. Staples, had been festering for months and initially culminated in a decision by Saunders in September 2002 to quit. She advised Staples of this fact in late September – well before the Crandall incident. At that time, she advised Mr. Staples that she would be leaving in November, thereby affording him an opportunity to find a replacement.

Indeed, after she returned from vacation, the Division office affirmatively reached out to Ms. Saunders in an effort to have her reconsider and stay with the Company. The Division managers, including Mr. James Ingram, Division Manager, and Mr. Paul Fletcher, Assistant Division Manager, recognized that she had skills and that she was relied upon by Mr. Staples in many ways. It was their hope that her abilities could be harnessed positively and that she could learn to recognize that the Division office was there to help as part of the Bartlett team. The effort was made despite the fact that she was deemed by the Division to have been negligent in the handling of bills that significantly reduced the office's revenues and had consistently refused to acknowledge the centralized nature of certain Company procedures that the Division office had implemented consistent with overall corporate policies. Thus, in October 16, 2002, Mr. Staples met with Assistant Division Manager Fletcher and Assistant Local Manager Bosley. They then met with Saunders and encouraged her to stay. At the end of that meeting, she had agreed to remain an employee. Following the meeting, in a letter signed by Mr. Staples, the Company restated the issues raised with Ms. Saunders, emphasizing the key role played by the Division office and the necessity of Ms. Saunders working cooperatively with that office. The letter closed with the statement, "I look

> any issue, and the fact that "Division" has already questioned my integrity about work productivity and ethics.
>
> A copy of this letter is attached as Exhibit 5. Ms. Saunders' contention that the Crandall incident is somehow related to the Division's (nonsexual) "hostile environment" is bizarre to say the least.

## SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 6

forward to you playing an important role in our success within the guidelines I have set forth." A copy of this letter is attached as Exhibit 6.

Unfortunately, Saunders quit two weeks later, claiming that she could not work with the Division and contending, as she had previously, that Mr. Staples was the only supervisor to whom she had to answer.

In addition to her frivolous claim that she was constructively terminated rather than having quit and that such a constructive termination was linked to incidents of sexual harassment where, among other things, her own admissions point in a different direction, Ms. Saunders' complaint additionally asserts that she was the victim of retaliation. First, Ms. Saunders alleges that her title was changed from Administrative Assistant to Secretary. This is not true. Apparently, as was her habit, Ms. Saunders had asked for a job description from the Corporate office rather than the Division office. She was sent a job description that was out of date and no longer being used in the Division. Had she inquired with Division, she would have received the up-to-date job description entitled "Administrative Assistant – GTC Work."

Significantly, under Ms. Saunders' section of her complaint entitled "Retaliation," the vast majority of the assertions concern work-related problems Ms. Saunders claimed to have had with the Division office. This included the problem associated with employee Lee's vacation pay, the crashing of her computer, and the use of the portable phone. All of these claims related exclusively to work-related issues rather than protected activity and, therefore, further serve to underscore that Ms. Saunders' problems that caused her cessation of employment were entirely work-related.

Finally, her complaint has a section entitled "Defamation of Character." This has nothing to do with conduct protected by the Massachusetts Fair Employment Act. There is a suggestion that Bartlett has given her bad references. This is not true. There is also a description of an incident in late January 2003 when Ms. Saunders was found alone in Mr. Staples' office. The Company's conduct with respect to this incident was reasonable. Moreover, whatever the claim is, it has nothing to do with Ms. Saunders's

SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 7

cessation of employment or the issue of whether her cessation of employment was linked to protected activities.[4]

Ms. Saunders' complaint is a product of revisionist history. Unfortunately, the Crandall incident did occur and the Company responded to it properly and effectively. However, as her own statement made plain, Ms. Saunders' work-related problems were rooted in her refusal to acknowledge the Company's Division office and its staff as integral pieces in the Company's management structure and that procedures and instructions emanating from or involving that office must be followed. Ms. Saunders refused to follow such guidelines, acknowledged that she refused to follow such guidelines and having failed to convince the Company that she should be allowed to work in a wholly different manner without the need to answer to anybody other than her immediate supervisor, she quit. These facts are not actionable under the statute and, accordingly, the Company requests that the Commission issue a finding of no probable cause.

Respectfully submitted,

Gary L. Lieber
Attorney for
The F.A. Bartlett Tree Expert Co., Inc.

---

[4]     There is also an allegation that her Change of Status form upon termination is less favorable than former employee Crandall. What Ms. Saunders fails to recognize is that because she delayed formally advising the Company of the Crandall incident, his Change of Status form was completed when he resigned which was *before* the Company had notice of the Saunders-Crandall incident (other than the notice to Mr. Bosley to whom Ms. Saunders declared that she did not want him to communicate with anybody else about that incident).

## SCHMELTZER, APTAKER & SHEPARD, P.C.

Jessica Thrall
May 27, 2003
Page 8

I, Victor B. Fleck, an authorized officer of Respondent The F.A. Bartlett Tree Expert Co., Inc., swear under penalty of perjury that the factual assertions set forth in this Answer/Position Statement are true and correct to the best of my knowledge and belief.

_____
Victor B. Fleck
Vice President, Human Resources
The F.A. Bartlett Tree Expert Co., Inc.

Subscribed and sworn to before me this
28th day of May, 2003.

_____
Notary Public

Matthew Farin # 115853
My Commission expires:_____ My Commission Exp. June 30, 2007

cc:    Donna Saunders

AM3950.WPD